# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1149

_____

| | | |
|---|---|---|
| Thomas M. Godfrey; Elliot Blaylock; Jay Bluestone; Donald R. Briscoe; Barrett Burstein; Florissant News, Inc., a Missouri Corporation; Ramon Devine; Timothy C. Devine; Donald Griesmer; Ronald Kaemmerer; Ferguson News Co., Inc., a Missouri Corporation; Felix Kucenas; Thomas J. Murphy; Ann S. Pointer; Cyril Salvo; Norman Segall; Robert Stroud; Jack R. Vogt; Harold Weggeman, | * * * * * * * * * * * * | Appeal from the United States District Court for the Eastern District of Missouri. |
| Appellants, | * * | |
| v. | * * | |
| Pulitzer Publishing Company, a Corporation, | * * * | |
| Appellee. | * | |

_____

Submitted: June 11, 1998
Filed: December 1, 1998

_____

Before HANSEN and MURPHY, Circuit Judges, and DOTY,[1] District Judge.
_____

HANSEN, Circuit Judge.

Appellants brought an action pursuant to Section 2(a) of the Robinson-Patman Price Discrimination Act ("the Act"), 15 U.S.C. § 13(a) (1994), claiming that Pulitzer Publishing Company ("Pulitzer") engaged in illegal discriminatory sales of the Saint Louis Post-Dispatch newspaper ("the Post Dispatch"). On Pulitzer's motion, the district court dismissed the action for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Because we conclude the district court erred in its jurisdictional analysis, we reverse and remand.

I.

Pulitzer publishes the Post-Dispatch and distributes it by three primary methods. First, Pulitzer distributes newspapers for sale in vending machines and at retail outlets through independent contractors known as "branch dealers" or "branchmen." Second, Pulitzer sells newspapers to a network of independent carriers who then resell the papers to home subscribers. Finally, Pulitzer sells a limited number of newspapers to direct subscribers. This appeal involves the first method of distribution—sales via branch dealers.

Appellants are 17 of the roughly 37 branch dealers in the St. Louis area. Three of these 17 branch dealers operate in Illinois; 14 are based in Missouri. The 20 remaining branch dealers operate in either Missouri or Illinois. None of the 37 operate in both Missouri and Illinois. Pulitzer prints the Post Dispatch in Missouri and then

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

ships copies across the Mississippi River to Illinois for resale by the branch dealers located in that state.

Under this distribution method, the branch dealers purchase newspapers from Pulitzer and then resell them to retail outlets (newsstands, convenience stores, supermarkets, etc.) and via vending machines located within their service area. Each branch dealer operates within a clearly defined service area. Further, the branch dealers have historically recognized these service areas as being exclusive territories and appear to respect the historic boundaries between service areas.[2]

As filed with the district court, the complaint included 19 counts, each count alleging a violation of Section 2(a) of the Act, 15 U.S.C. § 13(a). Of these 19 counts, only Count I remains at issue. In Count I, appellants sought an injunction against Pulitzer based on an allegedly discriminatory pricing scheme. Specifically, appellants asserted that Pulitzer violated the Act by selling the Post-Dispatch to certain branch dealers at a lower price than Pulitzer sold the newspapers to appellants. Section 2(a) of the Act provides that:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, . . . and where the effect of such discrimination may be substantially to lessen

---

[2]Pulitzer asserts that while this exclusivity is not contractually mandated, the branch dealers operate as though the service areas are exclusive. (Appellee's Br. at 1-2.) We think that it is fair to say that appellants have conceded this point. We have found nothing in their briefs or other papers indicating that appellants disagree with Pulitzer's characterization. Further, in their initial brief filed with this court, appellants both illustrated and discussed the boundaries between each branch service area without suggesting that any branch dealer ever disregarded these boundaries.

competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . . .

Id. (emphasis added).

Courts and commentators compartmentalize Robinson-Patman claims into three types of violations. First, "[a] primary-line violation occurs where the discriminating seller's price discrimination adversely impacts competition with his—the seller's—competitors." Best Brands Beverage, Inc. v. Falstaff Brewing Corp., 842 F.2d 578, 584 n.1 (2d Cir. 1987) (citations omitted). "[A] secondary-line violation occurs where the discriminating seller's price discrimination injures competition among [the seller's] customers . . . ." Id. Finally, a tertiary violation occurs when, although "the purchasers of the discriminating seller did not compete directly, their customers competed within a unified market region." Id.

Appellants claim that Pulitzer's price discrimination harms competition between branch dealers. Thus, they claim a secondary-line violation. In particular, appellants alleged and Pulitzer admitted that Pulitzer reduced the price it charged certain branch dealers while continuing to charge appellants a relatively higher price. (Appellants' App. at 148, 167.) In this context, we refer to those branch dealers receiving the lower price as "favored branch dealers," and refer to the appellants as "disfavored branch dealers." Cf. Best Brands, 842 F.2d at 584.

Pulitzer filed a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The district court granted discovery for the limited purpose of determining the existence of jurisdiction. At the close of this discovery period, the court concluded that the appellants satisfied the Act's "in commerce" requirement. Despite this conclusion, the court dismissed the appellants' claim for lack of subject-matter jurisdiction because the appellants failed to provide sufficient evidence that the

4

favored and disfavored branch dealers compete for sales. Appellants appeal the dismissal of Count I.

## II.

Appellants argue three issues on appeal. First, appellants claim that <u>jurisdiction</u> under Section 2(a) of the Act does not depend on a competitive relationship between favored and disfavored buyers. Second, appellants contend that even if such a jurisdictional requirement exists, they sufficiently demonstrated a competitive relationship between the branch dealers. Finally, appellants argue that in any event, the competitive relationship issue is so intermeshed with the merits that it should be resolved only after a full trial. We agree with appellants—jurisdiction under Section 2(a) does not require a showing of a competitive relationship—therefore, we do not reach the second and third arguments.

The district court held that it lacked subject-matter jurisdiction because the appellants failed to show a competitive relationship between the favored and disfavored branch dealers. Implicitly, therefore, the court concluded that such a relationship was a jurisdictional prerequisite under the Act. Such a conclusion presents a question of law which we review de novo. <u>See</u> <u>United States v. S.A.</u>, 129 F.3d 995, 998 (8th Cir. 1997) (reviewing subject-matter jurisdiction and statutory interpretation de novo), <u>cert. denied</u>, 118 S. Ct. 1200 (1998). Our review of the district court's fact-findings is governed by the principles laid out in <u>Osborn v. United States</u>, 918 F.2d 724 (8th Cir. 1990). In <u>Osborn</u>, we held that a district court has power to decide issues of disputed fact when ruling on a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. <u>Id.</u> at 729. "Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide." <u>Id.</u> (citing <u>Williamson v. Tucker</u>, 645 F.2d 404, 413 (5th Cir.), <u>cert. denied</u>, 454 U.S. 897 (1981)). When, as in this case, the district court relies "on its own determination of disputed factual issues, [we] review those findings under the 'clearly erroneous' standard." <u>Id.</u> at 730 (citing <u>Williamson</u>, 645 F.2d at 413).

5

Federal courts are courts of limited jurisdiction.  See Steel Co. v. Citizens for a Better Env't, 118 S. Ct. 1003, 1012 (1998).  "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"  Id. (quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884)) (alteration in original).  It is with these principles in mind that we undertake to ascertain the requirements of subject-matter jurisdiction in the instant case.

Unlike other federal antitrust legislation, namely the Sherman Act, jurisdiction under the Robinson-Patman Act is relatively narrow and "extends only to persons and activities that are themselves 'in commerce.'"  Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 194 (1974).  Jurisdiction under Section 2(a) of the Robinson-Patman Act is not  established "merely by showing that allegedly anticompetitive acquisitions and activities affect commerce."  Id. at 195 (emphasis added).  "With almost perfect consistency, the Courts of Appeals have read the language requiring 'either or any of the purchases involved in such discrimination (be) in commerce' to mean that § 2(a) applies only where 'at least one of the two transactions which, when compared, generate discrimination . . . cross(es) a state line.'"  Id. at 200 (quoting Hiram Walker, Inc. v. A & S Tropical, Inc., 407 F.2d 4, 9 (5th Cir.), cert. denied, 396 U.S. 901 (1969); Belliston v. Texaco, Inc., 455 F.2d 175, 178 (10th Cir.), cert. denied, 408 U.S. 928 (1972)) (alterations in original).

Thus, the plain language of Section 2(a), and the cases interpreting that section, clearly establish the jurisdictional nature of the Act's unique "in commerce" requirement.  The district court was correct to address this issue as a threshold matter in determining its jurisdiction.  See Steel Co., 118 S. Ct. at 1012.  The district court found that because Pulitzer's sales to branch dealers in Illinois crossed a state line, the appellants satisfied the interstate commerce requirement.  We cannot say such a finding is clearly erroneous.  Indeed, we agree.  See Osborn, 918 F.2d at 730.  Therefore, we affirm the district court in this respect.

We find more troubling the district court's conclusion that appellants' satisfactory showing on the "in commerce" issue did not end the jurisdictional inquiry. According to the district court, appellants must also demonstrate a competitive relationship between the favored and disfavored branch dealers. The plain language of Section 2(a) suggests to us, however, that any inquiry into competition or into competitive relationships, tests and goes to a plaintiff's prima facie case, and not to jurisdiction.[3] And, as the Supreme Court recently reiterated, federal courts do not lose jurisdiction on the mere possibility that a plaintiff's averments fail to state a cause of action. Steel Co., 118 S. Ct. at 1010 (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

Our conclusion is strengthened by a review of the cases the district court cited as establishing a competitive relationship as a jurisdictional requirement. In Best Brands, for example, the Second Circuit held that a prima facie violation of the Act was not shown in the absence of actual competition. 842 F.2d at 586. To be sure, the Second Circuit left no doubt that a plaintiff in a secondary-line case must be able to "prove that, as the disfavored purchaser, it was engaged in actual competition with the favored purchaser(s)." Id. at 584. All of this, however, was in the context of reviewing the denial of a directed verdict after a jury trial. Id. at 581. At no point did the court attribute a jurisdictional quality to this competitive relationship requirement. To the contrary, the court viewed this issue as relating to a plaintiff's prima facie case. Id. at 586.

___

[3]We deliberately avoid the long, and ultimately fruitless, inquiry into the legislative history of the Robinson-Patman Act. "The Robinson-Patman Act as a whole was the product of such a complex series of interrelated legislative proposals that congressional intent is unusually difficult to decipher." Mayer Paving and Asphalt Co. v. General Dynamics Corp., 486 F.2d 763, 767 (7th Cir. 1973) (citations and quotations omitted), cert. denied, 414 U.S. 1146 (1974). "This is particularly true of the phrase requiring one of the sales to be 'in commerce.'" Id.

The remaining cases the district court relied on lead to the same conclusion. In White Industries, Inc. v. Cessna Aircraft Co., 657 F. Supp. 687 (W.D. Mo. 1986), aff'd, 845 F.2d 1497 (8th Cir.), cert. denied, 488 U.S. 856 (1988), the court found that favored and disfavored purchasers must compete in both a geographical and functional sense. Id. at 703. White Industries, however, was a case tried to the court and decided at the close of plaintiffs' evidence. Further, the district court in White Industries did not treat this issue as a jurisdictional matter. In Stelwagon Mfg. Co. v. Tarmac Roofing, the Third Circuit also treated the competitive relationship issue as an element of a plaintiff's prima facie case, and not as a jurisdictional prerequisite. See 63 F.3d 1267, 1271 (3d Cir. 1995), cert. denied, 516 U.S. 1172 (1996). Based on the foregoing, we think the district court erred in treating the competitive relationship issue as a threshold jurisdictional question.

While one might argue that the competitive relationship issue reflects an inherent aspect of the "in commerce" jurisdictional requirement, and not a separate jurisdictional hurdle, we find no basis in the language of the statute, and only a slight basis in federal case law, for reaching this conclusion. In fact, the only meaningful authority for such a conclusion comes from a single case. In Mayer Paving, the Seventh Circuit stated that "[o]nly those purchases which might injure competition are 'involved' [in commerce] under the Robinson-Patman Act." 486 F.2d at 769. The court characterized the question as being "an analogue to standing," and concluded that "a customer has standing only to raise and compare those sales which are injurious to his competition." Id. at 770.

While we find the logic of Mayer Paving somewhat seductive, we nonetheless resist its temptation. We think that the effect on competition and the competitive status of the preferred and disfavored purchasers are elements of the cause of action and go more to the merits of the appellants' case than to jurisdiction. In reaching our conclusion we are also mindful of the Court's recent admonition that "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is

8

proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy.'" <u>Steel Co.</u>, 118 S. Ct. at 1010 (quoting <u>Oneida Indian Nation of N.Y. v. County of Oneida</u>, 414 U.S. 661, 666 (1974)).

We hold, therefore, that appellants need not <u>prove</u> a competitive relationship between allegedly favored and disfavored buyers in order to establish subject-matter jurisdiction. It may be that appellants will be unable to prove any competitive relationship, and consequently, no competitive harm. Those shortcomings of proof, however, do not deprive the district court of jurisdiction—that is its power—to hear the case. Moreover, while the district court made findings of fact on this issue based on conflicting evidence, we choose not to pass judgment on those findings. Should the issue of a lack of a competitive relationship between favored and disfavored branch dealers present itself in the future, for example as part of a motion for summary judgment, the district court would then review the evidence under a different standard. <u>See</u> <u>Bathke v. Casey's Gen. Stores, Inc.</u>, 64 F.3d 340, 342-43 (8th Cir. 1995).

## III.

In summary, we hold that the narrow "in commerce" jurisdictional requirement for a secondary-line claim under Section 2(a) of the Robinson-Patman Act does not also require that the favored and disfavored buyers stand in a competitive relationship. The existence of such a competitive relationship is simply an element of a plaintiff's prima facie case. Therefore, we reverse the district court's order dismissing Count I of appellants' suit and remand the case for further proceedings in accordance with this opinion.

DOTY, District Judge, dissenting.

I respectfully dissent. Although I agree that the analysis of Section 2(a) jurisdictional requirements does not require a separate finding of "in commerce" and a "competitive relationship" between the preferred and disfavored purchaser, I am willing to be seduced by Mayer Paving to the extent that it holds that a competitive relationship is a necessary element of the "in commerce" jurisdictional requirement, and because the lower court found that element lacking, would affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT