METROBANK, NATIONAL ASSOCIA-
TION, Wells Fargo Bank Iowa, N.A.,
Bank of America, N.A., Firstar Bank,
N.A., and U.S. Bank, N.A., Plaintiffs,

v.

Holmes FOSTER, in his official capaci-
ty as Superintendent of Banking and
Administrator of Electronic Transfer
of Funds, Iowa Division of Banking,
Iowa Department of Commerce, De-
fendants.

No. 4–01–CV–10226.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 21, 2001.

Jeffrey E Lamson, Mark McCormick, Belin Lamson McCormick, Zumback & Flynn PC, Des Moines, IA, E Edward

Bruce, Keith A Noreika, Covington & Burling, Washington, DC, for Metrobank, National Association, Wells Fargo Bank Iowa, N.A., Bank of America, N.A., Firstar Bank, N.A., U.S. Bank, N.A.

Donald G Senneff, Attorney General of Iowa, Des Moines, IA, Dennis W Johnson, Iowa Attorney General, Prosecutions Division, Des Moines, IA, for Holmes Foster.

## ORDER

LONGSTAFF, Chief Judge.

Before the Court is a motion to dismiss, filed May 31, 2001, by defendant Holmes Foster, in his official capacity as Superintendent of Banking and Administrator of Electronic Transfer of Funds, Iowa Division of Banking, Iowa Department of Commerce ("the Administrator"). Plaintiffs (collectively "the National Banks") filed their resistance on June 11, to which defendant replied on June 19. The matter has been thoroughly briefed by both sides and is now considered fully submitted.

There are two other motions pending in this case. Plaintiffs filed a motion for summary judgment on May 10, 2001. In conjunction with plaintiffs' motion, an amicus curiae brief was filed by the Office of the Comptroller of Currency for the United States on May 24. Then, on May 22, defendant filed a motion to continue plaintiffs' summary judgment motion. Neither of these motions have been fully submitted, as both await the outcome of the Court's ruling on defendant's motion to dismiss.

## I. THE NATIONAL BANKS' COMPLAINT

Through this action, the National Banks seek injunctive and declaratory relief, pursuant to 28 U.S.C. §§ 2201–2202, from Iowa law prohibiting the charging of fees to non-accountholder customers for the use of automated teller machines ("ATMs").

Iowa Code chapter 527 governs the electronic transfer of funds, and thus ATMs. Section 527.5(2)(a) states:

> A satellite terminal shall be available for use on a nondiscriminatory basis by any other financial institution which has its principal place of business within this state, and by all customers who have been designated by a financial institution using the satellite terminal and who have been provided with an access device, approved by the administrator, by which to engage in electronic transactions by means of the satellite terminal.

(Emphasis added). This "nondiscriminatory basis" requirement is extended by Iowa Code section 527.4 to financial institutions that do not have their primary place of business in Iowa, such as the National Banks. See also Iowa Administrative Code § 187–10.4(527)(3)(a)(3). This provision has been interpreted by a former Administrator[1] to mean that surcharging individual users of satellite terminals, or ATMs, would violate Iowa Code chapter 527. See Complaint, Exhibit D (stating that surcharges are not expressly provided for by statute, and that surcharges appear to be inconsistent with chapter 527's "nondiscriminatory basis" requirement). Additionally, Iowa Attorney General Thomas Miller informed the Supreme Court of the United States in a previous case involving similar issues that under Iowa law a bank "may not levy a surcharge against any cardholder simply for using its ATM." See Complaint, Exhibit E at 7 (petition for a

---

1. Richard Buenneke formerly held the position which is now occupied by the named defendant in this case.

writ of certiorari in *Bank One v. Guttau* ).[2]

The National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq.,* provided for the establishment of federally-chartered national banks, such as plaintiffs in this case. "The NBA grants national banks the authority to exercise 'all such incidental powers as shall be necessary to carry on the business of banking.'" *Bank One v. Guttau,* 190 F.3d 844, 848 (8th Cir.1999) (citing *First Nat'l Bank of E. Ark. v. Taylor,* 907 F.2d 775, 777 (8th Cir.1990) (quoting 12 U.S.C. § 24 (Seventh))). Under the NBA, the Office of the Comptroller of the Currency ("OCC") is the regulatory agency governing national banks' services. The OCC has stated that a national bank may charge its customers non-interest charges and fees, and "[t]he establishment of non-interest charges and fees, and the amounts thereof, is a business decision to be made by each [national] bank, in its discretion." 12 C.F.R. § 7.4002(a) and (b). It has also set up factors for evaluating whether a bank's non-interest charges and fees are appropriate. *Id.*

Three of the National Banks in this case sought the opinion of the OCC regarding their plans to charge non-accountholder customers a fee for using their ATMs in Iowa. On March 27, 2001 Metrobank received a letter from the OCC concluding that it could "charge the ATM access fees it has established" in accord with the NBA and 12 C.F.R. § 7.4002(a). *See* Complaint, Exhibit A at 4. Wells Fargo received a similar letter from the OCC dated March 21, 2001, and Bank of America did as well

on October 25, 1999. *See* Complaint, Exhibits B and C.[3]

The National Banks state in their complaint that they have purchased, installed, protected, supplied and maintained ATM machines at numerous locations in Iowa. The National Banks also incur rental costs for those machines which are not on bank premises. *See* Complaint ¶ 27. "To offset these ATM operating costs and to recover the investment required to purchase or lease, install and maintain ATMs, the National Banks desire to charge fees for the use of their ATMs by non-accountholder customers." *Id.* The National Banks have not yet instituted these plans because of Iowa Code Chapter 527 and "the Iowa ATM fee prohibition." *Id.* at ¶¶ 28–29. The National Banks filed the present lawsuit to resolve the matter, as they assert "a case or controversy exists between the parties that requires resolution by this Court of the declaratory judgment and injunctive relief that the National Banks seek." *Id.* at ¶ 29.

## II. APPLICABLE LAW & DISCUSSION

In his motion to dismiss, the Administrator argues this Court does not have subject matter jurisdiction. Alternatively, if the Court were to find it had subject matter jurisdiction, the Administrator argues the Court should dismiss the case under the doctrine of abstention because it is a matter that should be dealt with first by the Iowa state courts.

---

**2.** In his initial brief in support of his motion to dismiss, defendant has asserted the following: "Let there be no doubt about it, the Superintendent of Banking and the Attorney General [of Iowa] believe that [Iowa Code] chapter 527 prohibits charges by ATM owners that are not authorized by section 527.5(6)."

*See* Brief in Support of Defendant's Motion to Dismiss at 16.

**3.** Each letter also noted that a national bank's right to charge such fees is not conditioned on receiving a confirming opinion letter from the OCC. *See* Complaint, Exhibits A—C.

A. Standard of Review

 Under Federal rule of Civil Procedure 12(b)(1), "a party may raise the defense of 'lack of jurisdiction over the subject matter' in a motion before answering the complaint filed in any action." *Slycord v. Chater*, 921 F.Supp. 631, 634 (N.D.Iowa 1996). The Court may consider matters outside the pleadings on a motion to dismiss for lack of subject matter jurisdiction. *See Trimble v. ASARCO, Inc.*, 83 F.Supp.2d 1034, 1036 (D.Neb.1999) (citing *Godfrey v. Pulitzer Publishing Co.*, 161 F.3d 1137, 1140 (8th Cir.1998) *cert. denied* 526 U.S. 1098, 119 S.Ct. 1575, 143 L.Ed.2d 671 (1999) (other citation omitted)). Jurisdictional issues are always for the Court to decide. *See Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990). "[J]urisdiction is a threshold question [and] judicial economy demands that the matter be decided at the outset rather than deferring it until trial . . . ." *Id.*

B. Whether Subject Matter Jurisdiction Exists

1. Case or Controversy

 The National Banks seek a declaratory judgment that Iowa law, prohibiting fees for ATM services it provides to non-accountholder customers, is preempted by the NBA.

> In *a case of actual controversy* within its jurisdiction . . . any court of the United States upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added). *See also* Fed.R.Civ.P. 57. The Administrator counters that the National Banks have not attempted to levy the charges against non-accountholder customers, and that therefore no case of actual controversy exists.

 Prior to enactment of 28 U.S.C. § 2201, requests for declaratory judgment were held not to be within a federal court's jurisdiction under Article III of the United States Constitution. *See Willing v. Chicago Auditorium Assn.*, 277 U.S. 274, 289, 48 S.Ct. 507, 72 L.Ed. 880 (1928) (cited in *Calderon v. Ashmus*, 523 U.S. 740, 745, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998)). After its passage on June 14, 1934, the Supreme Court held in *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937) that Congress validly conferred jurisdiction on federal courts to issue declaratory judgments in appropriate cases through 28 U.S.C. § 2201, and in that case allowed an insurance company to obtain a determination regarding the validity of an insurance policy. *Id.* at 239–40, 57 S.Ct. 461 (cited in *Calderon*, 523 U.S. at 746, 118 S.Ct. 1694). To seek a declaratory judgment, however, plaintiffs' claims must be found ripe. "The doctrine of ripeness is basically a matter of timing, which requires (1) 'a sufficiently concrete case or controversy within the meaning of Article III of the Constitution', and also, (2) 'prudential considerations must justify the present exercise of judicial power.' " *See Gopher Oil Co. v. Bunker*, 84 F.3d 1047, 1050 (8th Cir.1996) (quoting *Christopher Lake Dev. Co. v. St. Louis County*, 35 F.3d 1269, 1272–73 (8th Cir.1994)).

Recently, in *Calderon*, the Supreme Court determined that there was not a controversy under section 2201. *Calderon*, 523 U.S. at 749, 118 S.Ct. 1694. Plaintiffs were a class of death-row prisoners who sought a determination of what federal law governed their separate claims against the state of California when they sought habe-

as relief. *Id.* at 746, 118 S.Ct. 1694. The Supreme Court characterized their claim as a desire to know which law governs so that they could ascertain, for example, the time limits that would govern their habeas action. *Id.* The Supreme Court found that what plaintiffs sought was not the resolution of a case or controversy in an alternative format, but rather an attempt "to gain a litigation advantage by obtaining an advance ruling on an affirmative defense." *Id.* at 747, 118 S.Ct. 1694 (citations omitted). The Supreme Court noted that if the matter were decided, none of the individual's claims would be resolved, but rather there would only be resolution of a "collateral legal issue governing certain aspects of their pending future suits." *Id.*

The case now before this Court is distinguishable from *Calderon.* The National Banks do not seek a ruling on the status of the law surrounding ATMs and fees in Iowa to gain an advantage in future litigation. Rather, the National Banks assert that they wish to charge fees they are entitled to under the NBA, but that such charges would subject them to legal consequences. The National Banks reasonably believe the Administrator will attempt to halt any program where non-accountholders are charged fees for the use of ATM's. The state's laws indicate Iowa will not allow such fees to be charged, *see* Iowa

Code § 527.5(2)(a); a predecessor to the Administrator indicated such fees will not be allowed under Iowa law, *see* Complaint, Exhibit D; the state's attorney general has stated that surcharges against cardholders for using a bank's ATM are not tolerated under Iowa law, *see* Complaint, Exhibit E at 7; and defendant states in its brief that it believes the National Banks cannot charge such fees under existing Iowa law. *See* Brief in Support of Defendant's Motion to Dismiss at 16. Additional support for finding an actual case or controversy is found in the recent litigation between a national bank and a predecessor to the Administrator. *See Bank One v. Guttau,* 190 F.3d 844, 848 (8th Cir.1999), *cert. denied* 529 U.S. 1087, 120 S.Ct. 1718, 146 L.Ed.2d 641 (2000).[4] In that case, Bank One had placed ATMs with advertising in retail stores in Iowa, in violation of Iowa law, and removed them when an enforcement suit was filed in state court. The banks then sought relief before this Court, and such relief was eventually granted by ruling of the Eighth Circuit.

As mentioned, the Administrator supports the interpretation that Iowa Code chapter 527 does not allow for surcharges on ATM usage. The National Banks do not dispute this statutory interpretation but contend that preemptive federal law permits them to institute programs[5] for

---

4. *See generally* Megan M. Althoff, *The National Bank Act's Federal Preemption of State Electronic Funds Transfer Acts,* 25 JOURNAL OF CORPORATION LAW 843 (Summer 2000) (analyzing the Eighth Circuit's *Bank One* decision).

5. The Administrator has argued that the National Banks have not sufficiently disclosed exactly what their programs of charging non-accountholder customers for ATM usage will entail, nor have they indicated that they necessarily will charge such fees if permitted to by a declaratory judgment by this Court. The Court finds neither of these reasons persuasive no case or controversy exists. The

National Banks, in their complaint and as clarified by their resistance brief, "intend to directly charge only their non-accountholders a fee for using their ATMs." *See* Plaintiffs' Resistance to Defendant's Motion to Dismiss at 8. If this Court were to grant declaratory relief to the National Banks, the boundaries of what they may charge appear to be set out by pertinent federal regulations and monitored by the OCC. *See* 12 C.F.R. § 7.4002(b)(1–4) (listing factors national banks are to consider in establishing non-interest charges and fees). Further, this Court finds the National Banks have clearly declared their intention to charge such fees

charging ATM fees to non-accountholder customers.[6] To have a case or controversy, it is not necessary for the National Banks to purposefully violate the Iowa law, especially in light of Bank One's recent actions and the Administrator's response in that case. Accordingly, the Court finds that there now exists " 'a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Gopher Oil*, 84 F.3d at 1051 (quoting *Caldwell v. Gurley Refining Co.*, 755 F.2d 645, 649 (8th Cir. 1985) (other citations omitted)).

## 2. Preemption

▮▮▮▮ Federal question jurisdiction under 28 U.S.C. § 1331 is generally governed by the well-pleaded complaint rule, under which federal jurisdiction must exist on the face of plaintiff's complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Under the well-pleaded complaint rule, federal preemption generally will not suffice to create federal question jurisdiction as it is ordinarily "raised as a defense to the allegations in a plaintiff's complaint." *Id.* There are exceptions to this rule, as indicated by the following statement of the Supreme Court which is relevant in this instance.

It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. See *Ex Parte Young*, 209 U.S. 123, 160–162, 28 S.Ct. 441, 52 L.Ed. 714 (1908). A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve. See *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199–200, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908); see also *Franchise Tax Board* [*v. Construction Laborers Vacation Trust*, 463 U.S. 1,] 19–22 and n. 20, 103 S.Ct. 2841, 77 L.Ed.2d 420 [ (1982) ]; Note, Federal Jurisdiction over Declaratory Suits Challenging State Action, 79 Colum. L.Rev. 983, 996–1000 (1979). This Court, of course, frequently has resolved pre-emption disputes in a similar jurisdictional posture. See, *e.g.*, *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *Florida Lime & Avocado Growers, Inc. v. Paul.* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

should they be granted declaratory relief. *See* Plaintiffs' Resistance to Defendant's Motion to Dismiss at 7 (citing Complaint ¶¶ 27–28).

6. The Administrator argues while he "strongly believes that his interpretation of chapter 527 is correct and intends to defend that interpretation vigorously," the Iowa Supreme Court or another Iowa state court could interpret the statute differently. *See* Brief in Support of Defendant's Motion to Dismiss at 19. This Court finds that the possibility that the

Iowa Supreme Court *could* interpret the statute differently from the Administrator is not sufficient justification to find a case or controversy lacking in this case. Further, the Court believes this is not an issue which should be certified to the Iowa Supreme Court as the parties agree on the interpretation of the Iowa statute at issue. *See* Plaintiffs' Resistance to Defendant's Motion to Dismiss at 3 (stating the National Banks agree that Iowa law does not allow ATM usage fees), and *Hartford–Carlisle Savings Bank v. Shivers*, 566 N.W.2d 877, 884 (Iowa 1997).

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Federal preemption "does not always arise as a defense to a coercive action" because Congress enacted the declaratory judgment act, 28 U.S.C. § 2201, and the independent grounds for federal relief in such cases is the injunction sought by plaintiffs under the act. *See Middle South Energy, Inc. v. Arkansas Pub. Serv. Comm.*, 772 F.2d 404, 409–10 (8th Cir. 1985) (citing *Franchise Tax Board*, 463 U.S. at 12, n. 12, 103 S.Ct. 2841) (other citations omitted). In effect, this creates an exception to the well-pleaded complaint rule when a plaintiff seeks an injunction on grounds that state law is preempted by federal law. *See id.* at 410, n. 16 (citing *First Fed. Sav. & Loan Ass'n v. Anderson*, 681 F.2d 528 (8th Cir.1982) (declaratory judgment only sought; no pending state proceeding to enjoin) (other citation omitted)); *see also First Nat'l Bank of Eastern Arkansas v. Taylor*, 907 F.2d 775, 776–77 n. 3 (8th Cir.), *cert denied* 498 U.S. 972, 111 S.Ct. 442, 112 L.Ed.2d 425 (1990), and CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3566 at 99 ("[T]o hold that a federal court would have jurisdiction of a suit to enjoin enforcement of a state statute, but not of a suit for a declaration that the statute cannot be enforced, would be to turn somersaults with both history and logic.").

The Administrator argues Eighth Circuit precedent precludes this Court from assuming subject matter jurisdiction over this case. However, the cases relied upon are inapposite to the issue now before this court. *See Hurt v. Dow*, 963 F.2d 1142 (8th Cir.1992) (finding state court suit improperly removed to federal court based on claim by defendant that action preempted by federal law) and *Berger Levee Dist., Franklin County, Mo. v. United States*, 128 F.3d 679 (8th Cir.1997) (finding district court did not have subject matter jurisdic-

tion to hear plaintiff's claim that was grounded solely upon Missouri state statutes, despite a federal defense of immunity). While these cases highlight the application of the well-pleaded complaint rule and federal court's limited jurisdiction, neither case is persuasive precedent in the context of analyzing claims for declaratory and injunctive relief under 28 U.S.C. § 2201.

The Administrator also argues *Fleet Bank v. Burke*, 160 F.3d 883 (2nd Cir. 1998) instructs this Court to find it lacks subject matter jurisdiction. In that case, plaintiff was a national bank that sued Connecticut's banking commissioner in federal court seeking a declaration that Connecticut statutes did not prohibit the bank from charging non-accountholder customers ATM usage fees, or in the alternative, that the Connecticut statute was preempted by the NBA. *Id.* The *Fleet Bank* court had a detailed discussion of subject matter jurisdiction in declaratory judgment actions involving allegations that a state law is preempted. *See id.* at 885–890. The court found that it would have jurisdiction under *Shaw*, 463 U.S. at 96 n. 14, 103 S.Ct. 2890, but that it did not in the case before it as Fleet Bank asked the federal court to interpret the state law concerning whether it could charge non-accountholder customers ATM usage fees. *Fleet Bank*, 160 F.3d at 891. The Court stated several reasons for rejecting jurisdiction, *id.* at 891–92, but all of these reasons related to its fear that federal courts would be forced to make an "unwarranted incursion on the authority of state courts to construe state statutes" if it extended the *Shaw* exception to include cases where plaintiff disputed the interpretation of state statutes. *Id.* at 892.

Rather than supporting defendant's arguments in the case now before this Court, *Fleet Bank* indicates this Court has sub-

ject matter jurisdiction as the parties do not dispute the interpretation of the state law at issue.

C. Whether Abstention is Appropriate

 The Administrator further argues this Court should abstain from hearing this case, and dismiss the matter, under *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

> *Pullman* abstention requires consideration of (1) the effect abstention would have on the rights to be protected by considering the nature of both the right and necessary remedy; (2) available state remedies; (3) whether the challenged state law is unclear; (4) whether the challenged state law is fairly susceptible to an interpretation that will avoid any federal constitutional question; and (5) whether abstention will avoid unnecessary federal interference in state operations.

*Beavers v. Arkansas State Bd. of Dental Examiners*, 151 F.3d 838 (8th Cir.1998) (citations omitted). Under this doctrine, a federal court should abstain if deferring or declining jurisdiction will avoid inconsistency with a later state court ruling, or if a federal court can avoid involvement altogether simply by allowing the state courts to interpret the state law.

The Administrator relies heavily upon *Employers Assoc., Inc. v. United Steelworkers of America*, 19 F.3d 405 (8th Cir.), *vacated by* 23 F.3d 214 (1994) to support his abstention argument. In that case plaintiffs challenged a Minnesota state law declaring it an unfair labor practice for employers to hire permanent replacements during a strike, as they argued it was preempted by federal law. *Employers Assoc.*, 23 F.3d at 214–15. The district court decided not to abstain pursuant to *Pullman*, but the Eighth Circuit reversed. *Id.* at 408. At the time the district court decided the case, the Minnesota Court of Appeals had not yet interpreted the act. During the federal appeal, however, the state court of appeals interpreted the act to avoid the preemption argument. That case was then pending before the Minnesota Supreme Court. *Id.* at 407. The Eighth Circuit in reversing the lower court stated that it was the "the most prudent course ... to await a definitive interpretation by Minnesota's highest court." *Id.* at 408. Later, it was discovered the Minnesota Supreme Court had given a final interpretation of the statute seven days before the Eighth Circuit's ruling; therefore, the initial ruling was vacated. *See* 23 F.3d at 214–15.

The case now before this Court is different. There appears to be no case pending before an Iowa state court, let alone the Iowa Supreme Court, that would resolve whether Iowa Code chapter 527 prohibits national banks from charging non-accountholder customers ATM usage fees. Rather, the most relevant previous ruling of a court regarding this chapter of the Iowa Code was by the Eighth Circuit in *Bank One.* 190 F.3d 844 (8th Cir.1999). In that case, the Eighth Circuit determined that several provisions of Iowa Code chapter 527 were preempted by the NBA.[7] In light of the five National Banks agreement with the Administrator regarding the interpretation of the Iowa statute, it seems contextually appropriate for this federal court to

---

**7.** This Court notes the broad-reaching statement of the Eighth Circuit in *Bank One* that "whatever regulatory authority the states may retain with respect to national bank branches, the 1996 amendment [12 U.S.C. § 36(j)] clearly expresses Congress's intent that that authority no longer extends to national bank ATMs." 190 F.3d at 849. The Court finds the strength of the Circuit's statement persuasive in determining that it is appropriate for this similar matter to now be addressed.

address whether the National Banks may charge such fees.

## III. CONCLUSION

Therefore the Administrator's motion to dismiss is denied. Consistent with this Court's June 5, 2001 Order, the National Banks now have five days from the date of this Order to address the Administrator's motion to continue summary judgment proceedings.

IT IS SO ORDERED.