# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1647

_____

Thomas M. Godfrey, et al.,       *

                 Appellant,       *

                 *    Appeal from the United States

         v.              *    District Court for the Eastern

                 *    District of Missouri.

Pulitzer Publishing Co.,       *

                 Appellee.       *

_____

Submitted: November 12, 2001
Filed: January 9, 2002

_____

Before WOLLMAN, Chief Judge, BOWMAN, and STAHL,[1] Circuit Judges.

_____

STAHL, Circuit Judge.

Appellants Thomas M. Godfrey, et al., brought an action against Pulitzer Publishing Co. ("Pulitzer") pursuant to the Robinson-Patman Act § 2(a), 15 U.S.C. § 13(a) (1994), claiming that appellee had engaged in anticompetitive sales of its

_____

[1] The Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

newspaper, the St. Louis Post-Dispatch ("the Post-Dispatch"). The district court[2] granted summary judgment in favor of Pulitzer and the appellants brought this appeal. We affirm.

## I. Background

Appellants are branch dealers, or "branchmen," who purchase copies of the Post-Dispatch from Pulitzer at a discount and resell the newspapers to retail outlets, called "subs," and to the public through vending machines. Branchmen operate in exclusive geographic service areas, stocking vending machines or selling to subs only in their own territories. Under state law the relationship between branchmen and the publisher is not merely one of contract terminable at will; rather, branchmen have a property right in their branches that allows them to convey or sell their interest.[3] Miskimen v. Kansas City Star, 684 S.W.2d 394, 402 (Mo. App. 1984). Appellants are fourteen of the more than thirty branch dealers in the St. Louis area; three of them operate in Illinois and the remainder operate in Missouri.

The law suit underlying this appeal arose from an offer made by Pulitzer on May 8, 1996, to all branch dealers. At that time, branch dealers had threatened Pulitzer with litigation on a number of issues arising out of their business relationship. Pulitzer's offer, if accepted, entitled each branch dealer to lower

---

[2] The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

[3] Miskimen, a case involving a dispute between the Kansas City Star and its branch dealers, held that the publisher's conduct "created a reasonable expectation that each carrier owned a business that could be conveyed and sold in the knowledge based upon over ninety years of history that the carrier's business would continue so long as the individual carrier performed his part of the bargain." 684 S.W.2d at 402.

wholesale prices and increased subsidies and allowances[4] in return for signing a release of any possible claims against Pulitzer. A number of branch dealers accepted the original offer, a few others accepted after negotiating terms ensuring that their property rights in the branches would not be affected by the agreement (collectively, the "favored branch dealers"). Appellants rejected the offer, apparently because they believed that their potential causes of action against Pulitzer were worth more than the discounts and allowances available under the settlement [5] and because they remained concerned that their property interest in their branches would be threatened under the terms of the agreement.

The settlement offer stated that the new rates, fees and allowances would be available to the branch dealers upon execution of the agreement, but specified that "[a]fter the third year, these rates, fees and allowances may be revised by us from time to time" (Branch Dealer General Release Agreement, May 8, 1996). Although three years have passed since the execution of the agreements with the favored branch dealers, Pulitzer has not to date chosen to exercise its option to revise the rates, fees, or allowances.

On August 9, 1996, appellants filed a complaint in the district court, alleging price discrimination in violation of section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a). Appellants sought an injunction against Pulitzer in an attempt to prevent appellee from selling newspapers at the more favorable rates to

---

[4] Dealers receive allowances and subsidies for performing certain tasks such as inserting advertising sections or replacing rack cards in vending machines.

[5] Indeed, appellants eventually brought claims alleging violations of the Missouri Antitrust Law. These claims are currently pending in state court. Godfrey v. Pulitzer Publishing Co., No. 982-319, Circuit Court for the City of St. Louis, Missouri.

the branch dealers who had signed the agreement.[6]  In the proceedings that have followed, appellants have argued that the favorable rates were not and are not available to them on equal terms.   They reason first that, at the time of the original offer, they would have had to give up more in rights than the favored branchmen in order to receive the enhanced rates.  They argue second that, by continuing the enhanced rates after the expiration of the three year period during which the rates were guaranteed, Pulitzer has effectively given the favored branch dealers an additional benefit that was never presented to appellants on the face of the offer.

Section 2(a) states in relevant part that:

It shall be unlawful for any person engaged in commerce, in the course of such commerce . . . to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, . . . and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them . . .

15 U.S.C. § 13(a).   Thus, in order to establish a violation of the Act, appellants must show (1) that Pulitzer discriminated in price between appellants and the favored branch dealers; (2) that this price discrimination substantially affected competition between the appellants and the favored branch dealers;[7] (3) that the

_____

[6] The original complaint included nineteen counts, each alleging a violation of Section 2(a).  At issue in this appeal is only Count I, which sought the injunction based on Pulitzer's allegedly discriminatory pricing scheme.

[7] As we laid out in Godfrey v. Pulitzer Publ'g Co., 161 F.3d 1137, 1140 (8th Cir. 1998) (hereinafter "Godfrey I"), courts have held that section 2(a) applies to three categories of violations:  A primary-line violation occurs where "the discriminating seller's price discrimination adversely impacts competition with his -- the seller's -- competitors;" a secondary-line violation occurs where "the discriminating seller's

-4-

newspaper sales occurred in interstate commerce;[8] and (4) that the newspapers sold were of like grade and quality.  Id.  While there is no dispute that the fourth requirement is met here, the parties disagree as to whether appellants have shown the first three.

The district court initially dismissed appellants' case for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Specifically, the court reasoned that appellants had satisfied the interstate commerce requirement of Section 2(a), but that jurisdiction was nevertheless improper because appellants had been unable to show that there was a competitive relationship between them and the favored branch dealers, given that the branchmen operated in exclusive territories.  On appeal, we affirmed the district court's holding as to the interstate commerce requirement, but reversed on the issue of the competitive relationship between appellants and the favored branch dealers, holding that the effect on competition was not a jurisdictional requirement but rather an element of appellants' prima facie case.  Godfrey v. Pulitzer Publ'g Co., 161 F.3d 1137 (8th Cir. 1998) (hereinafter "Godfrey I").  We stated that "[i]t may be that appellants will be unable to prove any competitive relationship, and consequently, no competitive harm," but "[t]hose shortcomings of proof . . . do not deprive the district court of jurisdiction -- that is its power -- to hear the case."  Id. at 1142.

---

price discrimination injures competition among [the seller's] customers . . . ;" and a tertiary violation occurs where the customers of the purchasers of the discriminating seller "compete[] within a unified market region."  Best Brands Beverage, Inc. v. Falstaff Brewing Corp., 842 F.2d 578, 584 n.1 (2d Cir. 1987) (citation omitted). Appellants have alleged a secondary-line violation where appellants and favored branch dealers are customers of Pulitzer, the allegedly discriminating seller.  Godfrey I, 161 F.3d at 1140.

[8] The term "commerce" in section 2(a) refers to "trade or commerce among the several States and with foreign nations . . . ." Clayton Act § 1(a), 15 U.S.C. § 12(a); Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 194 (1974).

On remand, the district court granted Pulitzer's motion for summary judgment under Fed. R. Civ. P. 56(c). The court decided the case primarily on prong 1, holding that appellants had not shown that Pulitzer had discriminated in price between them and the favored branch dealers and that the offer in fact had been made to all branchmen on equal terms and had contemplated that the agreement would extend beyond three years. The court alternatively held that, because the branch dealers limited their sales to non-overlapping territories, any price discrimination could not affect competition between the appellants and the favored branch dealers.[9]

Appellants filed motions to alter or amend the judgment under Fed. R. Civ. P. 59(e), or, in the alternative, for relief from judgment pursuant to Fed. R. Civ. P. 60(b). The district court denied these motions. This appeal followed.

We review de novo the district court's decision granting summary judgment. See Bathke v. Casey's Gen. Stores, Inc., 64 F.3d 340, 343 (8th Cir. 1995). We

---

[9]On remand, the district court additionally found that appellants' evidence was not sufficient to establish the interstate commerce requirement. This conclusion is puzzling, given our holding in Godfrey I affirming that the interstate commerce requirement of section 2(a) is jurisdictional in nature and that it has been met in this case. 161 F.3d at 1141. At that time, we discussed the standard for determining whether the "in commerce" requirement has been met: "'With almost perfect consistency, the Courts of Appeals have read the language requiring either or any of the purchases involved in such discrimination (be) in commerce to mean that § 2(a) applies only where at least one of the two transactions which, when compared, generate discrimination . . . crosses a state line.'" Godfrey I, 161 F.3d at 1141 (quoting Gulf Oil, 419 U.S. at 200) (internal quotation omitted). We agreed with the district court that appellants had met this standard because the sales to the Illinois branch dealers (some of whom are appellants and some of whom are favored branch dealers) cross state lines. In our current review, which takes place in the context of the grant of summary judgment on the same set of facts, we see no reason to abandon our holding in Godfrey I.

review the record in the light most favorable to the non-moving party, see id., and determine whether the movant demonstrated that there are no outstanding issues of material fact and that it is entitled to judgment as a matter of law, id.; Fed. R. Civ. P. 56(c).

We may affirm the district court's judgment on any grounds supported by the record. See DeBruce Grain, Inc. v. Union Pac. R. Co., 149 F.3d 787, 790 (8th Cir. 1998). In this case, we find that the district court's holding as to prong 2, that appellants failed to show that the price discrimination had injured competition, is dispositive and we affirm on that ground. We accordingly do not reach the question of whether the favorable prices were equally available to appellants.

## II. The Effect on Competition

In keeping with the language of section 2(a) -- a violation occurs "where the effect of [price] discrimination may be substantially to lessen competition . . . or to injure, destroy, or prevent competition," 15 U.S.C. § 13(a) (emphasis added), -- the Supreme Court has repeatedly held that section 2(a) does not "require that the discriminations must in fact have harmed competition, but only that there is a reasonable possibility that they 'may' have such an effect." Corn Products Refining Co. v. FTC, 324 U.S. 726, 742 (1945). See Falls City Indus., Inc. v. Vanco Beverage, Inc., 460 U.S. 428, 434-35 (1983); J. Truett Payne Co., Inc. v. Chrysler Motors Corp., 451 U.S. 557, 561-62 (1981); FTC v. Morton Salt Co., 334 U.S. 37, 46 (1948). The Supreme Court has further held that "for the purposes of § 2(a), injury to competition is established prima facie by proof of a substantial price discrimination between competing purchasers over time." Falls City Indus., 460 U.S. at 435 (citing Morton Salt, 334 U.S. at 46, 50-51.). See also White Indus., Inc. v. Cessna Aircraft Co., 845 F.2d 1497, 1501 (8th Cir. 1988).

This generous standard for inferring injury to competition, however, is logically limited by the necessity that the purchasers be competitors in the first place. See Ag-Chem Equip. Co., Inc. v. Hahn, Inc., 480 F.2d 482, 490 (8th Cir. 1973) ("As readily appears from a reading of the statute, evidence of the existence of competition is essential for a violation of the Robinson-Patman Act."); Bales v. Kansas City Star Co., 336 F.2d 439, 444 (8th Cir. 1964) (holding that section 2(a) claim required no further consideration since "on the plain implication" of the statutory provision, section 2(a) was intended to prevent "discriminations as between competitors, which admittedly as to each other the distributors were not"). In other words, only if the appellants and the favored branch dealers engage in competition may there be injury to that competition. This position has been most clearly articulated by the Second Circuit:

> In order to establish the requisite competitive injury in a secondary-line case [see fn. 7, supra], plaintiff must first prove that, as the disfavored purchaser, it was engaged in actual competition with the favored purchaser(s) as of the time of the price differential . . . . [This] requirement is satisfied where there is a showing of 'competitive contact' between the recipients of the price differential. It must therefore be shown that, as of the time the price differential was imposed, the favored and disfavored purchasers competed at the same functional level, i.e., all wholesalers or all retailers, and within the same geographic market.

Best Brands Beverage, Inc. v. Falstaff Brewing Co., 842 F.2d 578, 584-85 (2d Cir. 1987) (internal quotation and citation omitted). See also Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc. , 63 F.3d 1267, 1271 (3d Cir. 1995). We suggested in Godfrey I that, on remand, appellants would not be able to prove "competitive harm" without proving "any competitive relationship." 161 F.3d at 1142. Now, for the reasons that follow, we hold that appellants have failed to make a showing sufficient to establish that they were in a competitive relationship with the favored branch dealers and find that they therefore cannot show any reasonable possibility that the alleged price discrimination may affect competition.

We recognize at the outset that, although branch dealers operate in exclusive geographic territories, that fact is not dispositive on the question of competition.  Even where parties operate in airtight territories, they compete if the end-buyers of the product can freely travel between the geographic areas to purchase the commodity in question.[10]  See Falls City Ind., 460 U.S. at 436-38 (holding that there was competition between wholesale distributors of beer who sold exclusively in Indiana and Kentucky).   In this case, however, we are dealing with a commodity that sells at a fixed retail price.  While retail purchasers of the Post-Dispatch may admittedly choose which branch dealer's geographic area they will patronize, this choice is not price-motivated.[11]  As the district court suggested, for a newspaper customer the choice of which retail outlet or vending machine to frequent is one of convenience, not of competitive advantage.

Appellants counter that price is not the only determinant in competition. They point to testimony by their expert witness and by a few branch dealers to

---

[10] Two cases cited by Pulitzer for the proposition that newspaper distributors operating in exclusive geographic territories do not compete, Newberry v. Washington Post Co., 438 F. Supp. 470 (D.D.C. 1977) and Davidson v. Kansas City Star Co., 202 F. Supp. 613 (W.D. Mo. 1962), are distinguishable.  The distributors in these cases delivered to homes and not to subs or vending machines.  Unlike customers of home delivery, retail customers can choose to purchase the newspaper in an area other than their place of residence.

[11] It is true, as appellants have argued, that the favored branch dealers can offer lower prices to the subs in their territory than appellants can to the subs in their territories.  But, unlike the retail customers of the Post-Dispatch, the subs cannot move outside of their geographic area to purchase from a branch dealer charging lower rates; therefore there is no competition as to this aspect of the branch dealer's business.  The possibility, raised by appellants, that a chain store could purchase copies of the Post-Dispatch from a favored branch dealer and then distribute copies to its chain locations in non-favored territories, is mere speculation that is not substantiated by any record evidence.

argue that branchmen may compete in service. Appellants' contentions to this end boil down to the argument that a certain number of retail customers purchase newspapers early enough in the morning that they may find that the Post-Dispatch has not yet been delivered to the sub or vending machine of their choice and purchase the newspaper elsewhere. Thus, they argue, the appellants and the favored branch dealers are in competition as to availability.

Appellants' argument, while it has some theoretical bite, is not supported by the record. We do not take issue with appellants' contention that the delivery time of the papers is at least partially a function of investment in staff and delivery vehicles and that the favored branch dealers can put the savings from favorable rates toward such capital investments. If this were the only question, the record arguably (although far from definitively) may support a finding that delivery time is affected by the favorable rates. But, as we have explained supra, before we reach the question of whether the price discrimination may affect competition as to availability, we first must establish that there indeed is competition as to availability.

The record cannot support the contention that there is genuine competition among the branch dealers as to availability. In the numerous citations to the record supplied by appellants we find only one specific reference to a lost sale due to late delivery.[12] Even appellants' expert witness has not provided any tangible evidence, numerical or anecdotal, to show that the branch dealers in fact compete as to early availability. In this context, conclusory statements by a handful of branchmen, attesting that such competition exists, hardly suffice to show competition. In order to survive a motion for summary judgment, the non-moving

---

[12] A customer who purchases a newspaper at Hardee's at 3:50 am every morning buys in a different branch dealer's area if the paper is not available at the Hardee's at that hour.

-10-

party must be able to show "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (internal quotation omitted). Even reviewing the record in the light most favorable to appellants, we cannot find that it supports a finding of competition as to availability among appellants and the favored branchmen.

Having found that there is no competitive relationship between the branch dealers in the first place, we need not ask whether there is a reasonable possibility that Pulitzer's pricing scheme may have affected competition.[13] We therefore hold that summary judgment in favor of Pulitzer was properly granted.

We affirm.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[13]To the extent that we do not consider whether competition is affected by the alleged price discrimination, our analysis of course differs from that of the district court, which additionally concluded that "[t]he court finds plaintiffs have not shown that the price difference may harm competition." Given that our holding rests on the lack of underlying competition, we need not reach appellants' argument that Pulitzer had waived the question of competitive effects by failing to raise it in its motion for summary judgment.