Zell MILLER, Zell Miller for Governor, Pierre Howard, Georgians for Howard '90, Johnny Isakson, Johnny Isakson for Governor, Andrew Young, Young Working for Georgia, Lauren Mc-Donald, Lauren McDonald for Governor, Roy Barnes, Roy Barnes for Governor, Tim Ryles, Tim Ryles for Insurance Commissioner, Warren Evans, Warren Evans Election Committee, William L. Dickinson, Second District Campaign Committee, William J. Cabaniss, Friends of Bill Cabaniss Committee, Spencer T. Bachus, III, Bachus for Attorney General Committee, John Teague, James E. Folsom, Jr., Jim Folsom, Jr., for Lieutenant Governor Committee, Fob James, Fob James for Governor Committee, Kenneth D. Wallis, Alabamians for Ken Wallis Committee, George D.H. McMillan, Jr., The McMillan Committee, George Wallace, Jr., Wallace for Treasurer Committee, Charles A. Graddick, Graddick for Governor Committee, William J. Baxley, Friends of Bill Baxley, Paul Hubbert, Richard Shelby, Don Siegelman, Jimmy Sullivan, Sonny Hornsby, Friends of E.C. Sonny Hornsby, Mark Kennedy, Judge Mark Kennedy for Supreme Court and Friends of Judge Mark Kennedy, Candidates for Public Office in Georgia and Alabama and Their Respective Campaign Committees, Petitioners,

v.

FEDERAL COMMUNICATIONS COMMISSION, Respondent,

Capital Cities/ABC, Inc., Chris–Craft Industries, Inc., The Times Mirror Company, American Family Broadcast Group, Inc., Allbritton Communications Company, CBS, Inc., Chronicle Publishing Co., Fox Television Stations, Inc., Gillett Broadcasting of California, Inc., Gillett Communications of San Diego, Inc., Great American Television and Radio Company, Inc., Kelly Broadcasting Company, Kelly Television Company, Lin Television Corporation, McGraw–Hill Broadcasting Company, Inc., Midwest Television, Inc., National Broadcasting Company, Inc., The New York Times Company, Post–Newsweek Stations, Inc., The Providence Journal Company, The Spartan Broadcasting Company, Tribune Broadcasting Company, Westinghouse Broadcasting Company, Inc., WKRG–TV, Inc., WTVT, Inc., Meredith Corporation, A.H. Belo Corporation, Cosmos Broadcasting Corporation, Cox Enterprises, Inc., National Association of Broadcasters (NAB), Intervenors.

No. 92–8777.

United States Court of Appeals, Eleventh Circuit.

Sept. 29, 1995.

DC, for American Family Broadcast Group & Tribune Broadcasting.

Suzanne M. Perry, Peter C. Canfield, Dow, Lohnes & Albertson, Washington, DC, for A.H. Belo, Cosmos, & Cox Enterprises.

Theodore D. Kramer, Haley, Bader & Potts, Washington, DC, for Meredith Corp.

Mark J. Prak, Brooks, Pierce, McLeondon, Humprey & Leonard, Raleigh, NC, for North Carolina Association of Broadcasters.

Marjorie Nieset Neufeld, National Broadcasting, Inc., Burbank, CA, Arthur B. Goodkind, Koteen & Naftalin, Washington, DC, for National Broadcasting Co., Inc.

J. Roger Wollenberg, William R. Richardson, Jr., Wilmer, Cutler & Pickering, Washington, DC, for Capital Cities.

Ramsey L. Woodworth, Wilkes, Artis, Hedrick & Lane, Washington, DC, for Westinghouse Broadcasting.

Dennis Paul Corbett, Leventhal, Senter & Lerman, Washington, DC, for WKRG–TV.

Gregory M. Schmidt, Martin Wald, Covington & Burling, Washington, DC, for Post–Newsweek, etc.

Before TJOFLAT, Chief Judge, KRAVITCH, Circuit Judge, and CLARK, Senior Circuit Judge.

Roy F. Barnes, Robert S. Kahn, Barnes, Browning, Tanksley & Casurella, Marietta, GA, Albert G. Norman, Jr., John L. Watkins, L. Craig Dowdy, Bruce P. Brown, Long, Aldridge & Norman, Atlanta, GA, Michael Jablonski, Savell & Williams, Atlanta, GA, Roger S. Morrow, Morrow, Romine & Pearson, P.C., Montgomery, AL, Barbara A. McIntyre, Long, Aldridge & Norman, Atlanta, GA, for petitioners.

C. Grey Pash, Jr., FCC, Washington, DC, Daniel M. Armstrong, Catherine G. O'Sullivan, Andrea Limmer, U.S. Dept. of Justice, Washington, DC, for intervenors.

Carter G. Phillips, Richard Klingler, Craig J. Blakeley, Sidley & Austin, Washington,

TJOFLAT, Chief Judge:

This case involves a challenge to the Federal Communications Commission's (the "FCC" or "Commission") interpretation of section 315(b) of the Communications Act of 1934, 47 U.S.C. § 315(b), which establishes a limit on the amount that a broadcast station may charge a political candidate for campaign advertisements—the lowest unit charge. Petitioners, twenty-five candidates for various public offices in Georgia and Alabama along with their campaign committees, seek review of a declaratory ruling by the FCC concluding that federal law preempts all state causes of action that require, as a condition of granting relief, a determination

of the lowest unit charge under section 315(b) and that the FCC is the exclusive forum for adjudicating section 315(b) liability determinations. The FCC and the United States as respondents, joined by a group of broadcast station licensees, their parent corporations, and a national association representing broadcasters as intervenors, defend the issuance of the declaratory ruling as within the agency's delegated powers. We conclude that the issue presented by petitioners constitutes a hypothetical question rather than an actual case or controversy. Based on the constitutional prohibition against advisory opinions, we cannot decide this hypothetical question.

## I.

### A.

Section 315 of the Communications Act establishes certain requirements governing broadcast station licensees' treatment of candidates for public office. Section 315(a) requires that, subject to enumerated exceptions, licensees provide equal opportunities to all legally qualified candidates for a particular public office and prohibits censorship of candidate broadcasts. 47 U.S.C. § 315(a). The provision at issue in this case, section 315(b), regulates broadcast media rates as follows:

> The charges made for the use of any broadcasting station by any person who is a legally qualified candidate for any public office in connection with his campaign for nomination for election, or election to such office shall not exceed—
>
> (1) during the forty-five days preceding the date of a primary or primary runoff election and during the sixty days preceding the date of a general or special election in which such person is a candidate, the lowest unit charge of the station for the same class and amount of time for the same period; and
>
> (2) at any other time, the charges made for comparable use of such station by other users thereof.

*Id.* § 315(b). Section 315(b)(1) is commonly known as the "lowest unit charge" provision. Section 315(c) defines relevant terms, and section 315(d) states that "[t]he Commission shall prescribe appropriate rules and regulations to carry out the provisions of this section." *Id.* §§ 315(c), (d).

The comparable use requirement of section 315(b) was enacted as part of the Communications Act Amendments of 1952, Pub.L. No. 82–554, § 11, 66 Stat. 711, 717 (codified as amended at 47 U.S.C. § 315(b)(2)), to prevent broadcast licensees from charging political candidates higher rates than those charged to commercial advertisers.[1] S.Rep. No. 96, 92d Cong., 2d Sess. 22 (1971), *reprinted in* 1972 U.S.C.C.A.N. 1773, 1775. The lowest unit charge provision was added by the Federal Election Campaign Act (FECA) of 1971, Pub.L. No. 92–225, § 103(a)(1), 86 Stat. 3, 4 (1972) (codified as amended at 47 U.S.C. § 315(b)(1)), which had the dual purpose of reducing the costs of campaigns and increasing candidates' access to the broadcast media. S.Rep. No. 96, at 20, *reprinted in* 1972 U.S.C.C.A.N. at 1774.

### B.

Since shortly after the enactment of the lowest unit charge provision, the FCC has promulgated various regulations regarding the determination of the lowest unit charge, including two "political primers" dealing with all political programming requirements as well as notices dealing exclusively with section 315(b)(1). *See, e.g., Use of Broadcast and Cablecast Facilities by Candidates for Public Office,* 34 F.C.C.2d 510 (1972); *The Law of Political Broadcasting and Cablecasting,* 69 F.C.C.2d 2209 (1978); *Political Primer 1984,* 100 F.C.C.2d 1476 (1984); *Licensees and Cable Operators Reminded of Lowest Unit Charge Obligations,* 4 F.C.C.R. 3823 (1988). These FCC issuances describe broadcast station licensees' obligations under section 315(b), dictate how those obligations affect certain advertisement sales practices in the broadcast industry, and illustrate the appropriate determination of the lowest unit

---

1. Although the FCC's declaratory ruling focuses almost exclusively on the lowest unit charge provision of § 315(b)(1) rather than on the comparable use requirement of § 315(b)(2), we note that the rationale underlying the ruling would also apply in the comparable use context.

charge. The FCC codified its political programming policies in a separate report and order, which was adopted contemporaneously with the ruling at issue in this case. *See Codification of the Commission's Political Programming Policies,* 7 F.C.C.R. 678 (1991); *see also Codification of the Commission's Political Programming Policies,* 7 F.C.C.R. 4611 (1992) (memorandum opinion and order on reconsideration).

On October 10, 1991, the FCC released a public notice stating that "[t]he Commission is considering issuing on its own motion a declaratory ruling confirming its earlier conclusion that it has exclusive jurisdiction to determine questions of liability for violations of Section 315(b) of the Communications Act." *Notice of Intention to Issue Declaratory Ruling With Respect to Exclusive Authority of FCC to Determine Whether Broadcasters Have Violated Lowest Unit Charge Requirement of Section 315(b),* 6 F.C.C.R. 5954 (1991). The notice also indicated that the Commission was considering "preempt[ing] any cause of action in which an alleged violation of Section 315(b) is an essential element." *Id.* As the impetus for the FCC's action, the notice cited inconsistent decisions in state and federal court litigation[2] brought by candidates alleging overcharging by broadcast stations. The Commission commented that "[t]his exclusive jurisdiction over Section 315(b) liability determinations, moreover, *must be recognized by both federal and state courts." Id.* at 5955 n. 7 (emphasis added). The FCC requested comments as to whether its jurisdiction over section 315(b) is exclusive and whether the Commission should declare that all causes of action based on section 315(b) violations are preempted. *Id.* at 5954.

The FCC followed this notice with a declaratory ruling adopted December 12, 1991, which stated:

> By this ruling the Federal Communications Commission declares that any state cause of action dependent on any determination of the lowest unit charge under Section 315(b) of the Communications Act, or of some other duty arising under that subsection, is preempted by federal law. The sole forum for adjudicating such matters shall be this Commission.

*Exclusive Jurisdiction With Respect to Potential Violations of the Lowest Unit Charge Requirements of Section 315(b) of the Communications Act of 1934, as amended,* 6 F.C.C.R. 7511 (1991). In addition, the FCC announced that state causes of action based on section 315(b) violations filed in federal district court under diversity jurisdiction are preempted. *Id.* at 7520 n. 8. The Commission limited the scope of the ruling by concluding that "[o]ther claims, such as standard breach of contract actions, not dependent upon the determination of the lowest unit charge or some other duty arising under Section 315(b) are not preempted." *Id.* at 7511. The ruling also established procedures for filing complaints with the Commission's Mass Media Bureau regarding alleged section 315(b) violations. *Id.* at 7513–14.

To justify its preemption decision, the Commission stated that Congress had preempted the relevant causes of action by implication because: (1) the purpose and character of the federal law revealed an intent to preempt; (2) potentially inconsistent interpretations of federal law could result from state court litigation; and (3) state causes of action would create an obstacle to fulfilling Congress' objectives under the federal statute. *Id.* at 7511. The FCC also relied on its broad rulemaking authority under section 315(d), as well as that of sections 4(i) and 303(f) of the Communications Act, 47 U.S.C. §§ 154(i) & 303(f), as evidence of Congress' intent to preempt state court actions. *Id.* at 7512. Moreover, the FCC concluded:

> [R]egardless of whether *Congress*—either explicitly or by implication—has preempted state law claims based upon violations

---

**2.** The FCC cited the following two decisions from federal district courts as examples of inconsistent results: *Zell Miller for Governor v. Pacific & Southern Co.,* No. 1:91–CV–267–RLV (N.D.Ga. June 4, 1991) (granting defendant broadcaster's motion to dismiss after holding that plaintiffs had no implied right of action under § 315(b)), *vacated as moot,* No. 91–8561 (11th Cir. Dec. 28, 1992), and *Dickinson v. Cosmos Broadcasting Co.,* No. 91–T–072–N (M.D.Ala. Apr. 1, 1991) (remanding the case to the state court after concluding that there was no federal question at issue).

of Section 315(b), the Commission itself has authority to preempt such claims. Substantial judicial precedent makes clear that an agency may preempt state action under the Supremacy Clause whether or not an intention to preempt can be found in the governing statute or its legislative history.

*Id.* (citing *Fidelity Fed. Sav. & Loan v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)).

In an order adopted on May 14, 1992, the FCC denied two petitions for reconsideration filed by the petitioners in this case. *Exclusive Jurisdiction With Respect to Potential Violations of the Lowest Unit Charge Requirements of Section 315(b) of the Communications Act of 1934, as amended,* 7 F.C.C.R. 4123 (1992) (order on reconsideration). The Commission rejected all of the arguments raised in the petitions for reconsideration, which are essentially the same as the arguments petitioners advance before this court.

## II.

### A.

Petitioners assert that this court has jurisdiction to review the declaratory ruling under 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1). Section 402(a) provides that:

> Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of title 28.

47 U.S.C. § 402(a).[3] Section 2342(1) states that:

> The court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—
>
> (1) all final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47....

28 U.S.C. § 2342(1).

Before addressing the constitutional considerations affecting whether this court has jurisdiction over petitioners' challenge, it is necessary to characterize appropriately the FCC action. The Commission's declaratory ruling—that Congress (or the Commission itself) has preempted the jurisdiction of state courts and federal district courts, in diversity cases, when the candidate claims that the broadcaster's rates exceeded the lowest unit charge—is not a regulation promulgated pursuant to section 315(d). Unlike the regulations found at 47 C.F.R. §§ 73.1942, 76.206 (1994), the ruling does not define relevant statutory terms, dictate the use of certain industry practices, or prescribe appropriate methods for calculating the lowest unit charge. Furthermore, the declaratory ruling is not an adjudication of a pending case involving a dispute between a candidate and a broadcast station licensee. It is not a decision, a letter of admonition, or an order levying a penalty of forfeiture, a loss of operating authority, or a refund to the candidate. Because it is axiomatic that Congress has not delegated, and could not delegate, the power to any agency to oust state courts and federal district courts of subject matter jurisdiction, the FCC's declaratory ruling amounts to an agency opinion—a pronouncement interpreting the Communications Act to the effect that Congress impliedly abolished state and federal court jurisdiction over lowest unit charge violations.[4]

---

**3.** Section 402(b) specifies that certain FCC decisions, such as those involving licenses or permits, must be appealed to the Court of Appeals for the District of Columbia Circuit. 47 U.S.C. § 402(b).

**4.** The FCC's action in this case is thus distinguishable from prior cases involving the preemptive effect of the Communications Act in other contexts. *See, e.g., City of New York v. FCC,* 486 U.S. 57, 108 S.Ct. 1637, 100 L.Ed.2d 48 (1988) (upholding the preemptive effect of FCC regulations that conflicted with local regulations regarding technical standards for cable television); *Farmers Educ. & Coop. Union of Am. v. WDAY, Inc.,* 360 U.S. 525, 79 S.Ct. 1302, 3 L.Ed.2d 1407 (1959) (holding that § 315(a)'s prohibition on censorship preempts state libel suits arising from broadcasts by political candidates); *KVUE, Inc. v. Moore,* 709 F.2d 922 (5th Cir.1983) (upholding preemption of a state statute mandating use of the lowest unit charge on a year-round basis rather than only within the 45– to 60–day period before a primary or an election), *aff'd mem.,* 465

B.

Petitioners challenge the declaratory ruling based on the following arguments: (1) there can be no preemption by implication from the legislative scheme because section 315(b)(1) was enacted as part of the Federal Election Campaign Act, rather than as one of the Communications Act Amendments, and thus the relevant legislative scheme is FECA rather than the Communications Act; (2) the doctrine of primary jurisdiction would provide sufficient uniformity and allow the FCC to determine whether lowest unit charge violations have occurred without completely removing cases from federal and state courts; (3) the FCC cannot grant adequate relief for section 315(b)(1) violations because the relevant provisions of the Communications Act do not authorize the FCC to order refunds of overcharges; (4) the ruling impermissibly removes federal question jurisdiction from an Article III court; and (5) the power to preempt state law claims is not within the authority delegated by Congress to the FCC.

To support the Commission's power of preemption in this context, respondents and intervenors repeat many of the rationales from the declaratory ruling, including the following: (1) federal law occupies the field; (2) state activity in this area would frustrate uniform enforcement and create inconsistent interpretations of the statute, thereby harming the goal of increased candidate access to the broadcast media; (3) the complexity of determining lowest unit charge violations requires the expertise of the FCC; (4) the FCC has broad enforcement authority under section 315(d) and broad remedial powers under other provisions of the Communications Act; and (5) adjudication at the FCC is the exclusive remedy for lowest unit charge violations because section 315(b) provides no implied right of action.

C.

Section 315(b) addresses situations in which candidates enter into contracts with broadcast stations for the purchase of airtime for political advertisements; the statutory language requires that the price stated in the contract "shall not exceed ... the lowest unit charge."[5] Essentially, petitioners ask this court to declare whether, at some future date, a candidate may bring a breach of contract action in state court[6] contending that a broadcaster's rates exceeded the lowest unit charge and seeking recovery of the overcharge.[7] The question facing the court in such a case would be whether Congress has foreclosed the power of the state court to entertain that suit. Petitioners invite us to decide whether the state court would have to dismiss the candidate's claim on the broadcaster's motion or sua sponte for want of subject matter jurisdiction. By asking this court to decide what another court should do in a future case, petitioners are posing a hypothetical question, the answer to which would be an advisory opinion.

■ Article III of the Constitution limits the jurisdiction of the federal courts to actual "cases" or "controversies." Although "those two words have an iceberg quality, containing beneath their surface simplicity submerged complexities which go to the very heart of our constitutional form of government," the purpose of the requirement is readily apparent—to limit the federal courts to deciding issues presented in an adversary framework amenable to judicial resolution and to maintain separation of powers among the three branches of government. *Flast v. Cohen,* 392 U.S. 83, 94–95, 88 S.Ct. 1942, 1949–50, 20 L.Ed.2d 947 (1968); *see also Graham v. Butterworth,* 5 F.3d 496, 498–99

U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984).

**5.** This implicit adoption of section 315(b)'s lowest unit charge obligation is analogous to statutes requiring that contracts, such as insurance policies, contain certain provisions.

**6.** Petitioners also ask whether a candidate could sue in federal district court under diversity jurisdiction. Our references herein to suits in state

court include diversity suits in federal district court.

**7.** In such a suit, the lowest unit charge determination would be a question of fact. Absent the presence of FCC regulations governing the determination of the lowest unit charge, the court would simply look to the statute for guidance. Otherwise, the court, pursuant to the Supremacy Clause, would apply the FCC regulations.

(11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2136, 128 L.Ed.2d 866 (1994). The prohibition on advisory opinions is a logical corollary of the case or controversy requirement. "Thus, no justiciable controversy is presented ... when the parties are asking for an advisory opinion. . . ." *Flast,* 392 U.S. at 95, 88 S.Ct. at 1950.

 These Article III requirements apply with the same stringency in the administrative law context. *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 804 (11th Cir.1993) ("[T]he 'case or controversy' requirement is of special importance in cases where a federal court is being asked to rule on the legality of an act of the executive branch."), *cert. denied,* —— U.S. ——, 114 S.Ct. 683, 126 L.Ed.2d 651 (1994); *New Jersey Speech–Language–Hearing Ass'n v. Prudential Ins. Co.,* 724 F.2d 383, 385 (3d Cir.1983) ("Parties seeking to challenge administrative actions must satisfy the constitutional prerequisites derived from the 'case or controversy' clause of Article III, as well as a set of prudential requirements adopted by the courts. . . ."); *see also R.T. Vanderbilt Co. v. Occupational Safety & Health Review Comm'n,* 708 F.2d 570, 574 (11th Cir.1983) (prohibition on advisory opinions); *Alabama Power Co. v. FERC,* 685 F.2d 1311, 1314–15 (11th Cir. 1982) (ripeness), *cert. denied,* 463 U.S. 1230, 103 S.Ct. 3573, 3574, 77 L.Ed.2d 1415 (1983); *Branton v. FCC,* 993 F.2d 906, 909 (D.C.Cir. 1993) (standing), *cert. denied,* —— U.S. ——, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994). Federal courts simply are not permitted to render advisory opinions regarding agency pronouncements. *See, e.g., Town of Deerfield v. FCC,* 992 F.2d 420, 429 (2d Cir.1993) ("[T]he Commission plainly has no power to request or require such a court to render an opinion that is merely advisory."); *City of Peoria v. General Elec. Cablevision Corp. (GECCO),* 690 F.2d 116, 120 (7th Cir.1982) (A party "cannot simply put to the district court the abstract question whether [a rule] is valid, for it cannot receive an advisory opinion from a federal court."); *American President Lines v. Federal Maritime Bd.,* 112 F.Supp. 346, 348 (D.D.C.1953) ("The courts may not pass upon the legality of official action merely because some one desires a judicial opinion

on the subject."). Consequently, we are prohibited from determining the propriety of the FCC's declaratory ruling given the abstract circumstances in which this issue is presented.

It should be obvious from the foregoing discussion that our refusal to answer the question petitioners pose will not preclude them from obtaining an answer. Any of them who have been or may in the future be overcharged by a broadcaster while running for public office may seek judicial relief. In such a case, the court can determine whether Congress, in enacting section 315(b), has foreclosed the courts from granting relief by giving the Commission exclusive jurisdiction to adjudicate overcharge disputes. Because we conclude that no case or controversy is presented, we DISMISS the petition for review.

IT IS SO ORDERED.