UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JANE L. CLINE, in her capacity as
Insurance Commissioner of the
State of West Virginia; STATE OF
WEST VIRGINIA,

Petitioners,

INDEPENDENT INSURANCE AGENTS AND
BROKERS OF AMERICA, INCORPORATED;
NATIONAL ASSOCIATION OF
PROFESSIONAL INSURANCE AGENTS,
INCORPORATED,

Intervenors,

v.

JOHN D. HAWKE, in his capacity as
Comptroller of the Currency of the
United States of America; THE
OFFICE OF THE COMPTROLLER OF THE
CURRENCY, as an agency of the
United States of America,

Respondents.

No. 02-2100

NATIONAL ASSOCIATION OF INSURANCE
COMMISSIONERS,

Amicus Supporting Petitioners,

AMERICAN BANKERS ASSOCIATION;
AMERICAN BANKERS INSURANCE
ASSOCIATION AND WEST VIRGINIA
BANKERS ASSOCIATION,

Amici Supporting Respondents.

On Petition for Review from the
Comptroller of the United States, Department of Treasury.

Argued: October 30, 2002

Decided: November 19, 2002

Before LUTTIG, KING, and GREGORY, Circuit Judges.

Dismissed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Luttig concurred in the judgment. Judge King wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Scott Alan Sinder, COLLIER, SHANNON, SCOTT, P.L.L.C., Washington, D.C., for Intervenors. Gregory A. Elam, OFFICE OF THE INSURANCE COMMISSIONER, Charleston, West Virginia, for Petitioners. Douglas Bradford Jordan, Washington, D.C., for Respondents. **ON BRIEF:** John B. Williams, Christy Hallam DeSantis, COLLIER, SHANNON, SCOTT, P.L.L.C., Washington, D.C., for Intervenors. Frances A. Hughes, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Petitioners. Julie L. Williams, Daniel P. Stipano, L. Robert Griffin, Washington, D.C., for Respondents. John W. Bauer, Andrew J. Beal, Nathaniel S. Shapo, Director, Illinois Department of Insurance, NATIONAL ASSOCIATION OF INSURANCE COMMISSIONERS, Kansas City, Missouri; Howard W. Dobbins, Robert D. Perrow, Elizabeth M. Horsley, WILLIAMS MULLEN, P.C., Richmond, Virginia, for Amicus Curiae Insurance Commissioners. John J. Gill, Michael F. Crotty, AMERICAN BANKERS ASSOCIATION, Washington, D.C.; James T. McIntyre, Jr., Chrys D. Lemon, MCINTYRE LAW FIRM, Washington, D.C., for Amici Curiae American Bankers; Sandra Murphy, BOWLES, RICE, MCDAVID, GRAFF & LOVE, Charleston, West Virginia, for Amicus Curiae West Virginia Bankers.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

GREGORY, Circuit Judge:

Jane Cline, Insurance Commissioner of the State of West Virginia, and the State of West Virginia (collectively referred to as "Petitioners") brought suit against John Hawke, Comptroller of the Currency of the United States of America, pursuant to the Gramm-Leach-Bliley Act of 1999 ("GLBA").[1] Petitioners seek review of a preemption letter issued by the Office of the Comptroller of the Currency ("OCC") regarding insurance laws of the State of West Virginia. In the preemption letter, the OCC opined that federal law preempted four provisions and a portion of a fifth provision of the West Virginia Insurance Sales Consumer Protection Act, an act regulating the sale of insurance by banks and other financial institutions. Petitioners' suit challenges the authority of the OCC to issue such a preemption letter. For the following reasons, we dismiss the petition for review.

### I.

Lawyers for the West Virginia Bankers Association[2] sent a letter to the Chief Counsel of the OCC on May 8, 2000, requesting the preemption of ten provisions of the West Virginia Insurance Sales Consumer Protection Act. *See* Letter from Sandra Murphy, Attorney, Bowles, Rice, McDavid, Graff & Love, to Julie Williams, Chief Counsel, Office of the Comptroller of the Currency, 1 (May 8, 2000) (J.A. 2-12).[3] The OCC published notice of the request in the *Federal*

---

[1] The relevant provisions of the GLBA, Sections 104 and 304, are codified at 15 U.S.C. §§ 6701 and 6714, respectively. In this opinion, we cite Sections 104 and 304 of the GLBA, rather than to the provisions as codified.

[2] The West Virginia Bankers Association is a banking trade association consisting of community banks, regional banks, and savings and loans located in West Virginia.

[3] The Joint Appendix is cited as J.A. in this opinion.

*Register* on June 2, 2000, and sought comments as to whether federal law preempted the West Virginia statutory provisions. The OCC received sixty-seven comments in response to the published notice, including a response from Hanley Clark, former Insurance Commissioner for West Virginia. In a letter dated September 24, 2001, the OCC issued its opinion regarding the preemption of the West Virginia statutory provisions ("Preemption Letter"). The OCC concluded that four of the West Virginia statutory provisions, as well as a portion of a fifth provision, were preempted by federal law. Petitioners filed a petition for review of the Preemption Letter with this Court on September 20, 2002.

## II.

This Court has jurisdiction over this case pursuant to Section 304 of the GLBA. Under that section, where there is a regulatory conflict between a State insurance regulator and a Federal regulator, including the preemption of a State law, the Federal or State regulator "may seek expedited judicial review of such determination by the United States Court of Appeals for the circuit in which the State is located . . . ." Gramm-Leach-Bliley Act of 1999, Pub. L. No. 106-102, § 304(a) (1999). We must decide the petition based on a "review on the merits of all questions presented under State and Federal law, including the nature of the product or activity and the history and purpose of its regulation under State and Federal law, without unequal deference." § 304(e) (1999).

The dissent argues that there is no Article III standing in this case. With all due respect to Judge King, we disagree. In enacting the GLBA, Congress gave this Court original jurisdiction where there is a regulatory conflict between a State insurance regulator and a Federal regulator regarding insurance issues, including preemption issues. *See* § 304(a) (1999). The language of the GLBA, therefore, gives this Court jurisdiction over controversies in which a State regulator conflicts with the Federal regulator regarding the regulation of insurance issues. This grant of jurisdiction is, however, subject to Article III standing limitations.

To have Article III standing, a litigant must show that: "1) it has suffered an 'injury in fact' that is a) concrete and particularized and

b) actual or imminent, not conjectural or hypothetical; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). In the instant case, the Preemption Letter causes banks to change their business plans and business practices and therefore conflict with the West Virginia laws. West Virginia therefore suffers because it cannot enforce certain provisions of its insurance laws against national banks. To undermine the sovereign's authority to regulate activity for the protection of its citizens constitutes injury in fact. Thus, the first prong of the test for Article III standing is met.

It is clear that the injury is traceable to the OCC's action, which is challenged in this case, thus satisfying the second prong of the test for Article III standing. Finally, if this Court were to rule in the Petitioners' favor, West Virginia's grievance would be redressed, because the state would be able to compel national banks to comply with its insurance laws. Accordingly, we find that Article III standing exists in this case.

### III.

There are three issues before this Court. First, we must address whether the OCC has authority to interpret the GLBA. Second, if the OCC does have interpretive authority, we must determine what deference should be given to the OCC. Finally, we must determine whether the preemption of West Virginia law was a proper exercise of the OCC's interpretive authority.

### A.

Petitioners argue that an agency is without power to preempt state law unless Congress specifically delegates authority to an agency.[4]

---

[4]Petitioners also argue that Congress intended that states would remain the functional regulators of insurance and that state insurance regulations could only be negated by a federal agency in extremely limited circumstances. *See* Petitioners' Br. at 32. However, the preservation of state

*See* Petitioners' Br. at 30. They are correct in their assertion that the GLBA does not give the OCC express power of interpretation. However, an administrative agency's authority need not be expressly delegated by Congress. "Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit." *Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

It is clear from the language of the GLBA that Congress contemplated that the OCC would interpret some provisions of the GLBA. Section 104(d)(2)(C)(1) is titled "OCC Deference" and applies to state statutes enacted before September 3, 1998. Had Congress not anticipated OCC action interpreting the GLBA, there would be no need for an "OCC Deference" provision of the GLBA. Therefore, we find that the OCC has implicit interpretive authority under the GLBA. Accordingly, we turn now to determine the scope of that authority.

We look to statutes and other authorities related to the GLBA to determine the scope of the OCC's implicit interpretive authority under the GLBA. The GLBA addresses the ability of national banks to engage in insurance sales, solicitation and crossmarketing. Similarly, the National Bank Act ("NBA"), 12 U.S.C. § 1 *et seq.*, addresses the ability of national banks to engage in insurance sales in small towns. Under § 92 of the NBA, the OCC has explicit authority to regulate the sale of insurance by national banks located in small towns. *See* 12 U.S.C.A. § 92 (2001). The GLBA, in essence, expands the scope of § 92 to permit national banks to engage in insurance sales nationwide. Therefore, because Congress previously granted explicit interpretive authority to the OCC in § 92 of the NBA and the GLBA is an expansion of § 92, we find that the OCC must have implicit interpretive authority under the GLBA.

authority under GLBA is subject to the provisions of § 104, where the preemption statute is found. *See* Gramm-Leach-Bliley Act of 1999, Pub. L. No. 106-102, § 301 (1999). Therefore, state authority that prevents or significantly interferes with a depository institution's ability to engage in insurance sales, solicitation, or crossmarketing is still preempted under the GLBA.

## B.

We turn now to examine whether the OCC is entitled to deference in this case. The GLBA instructs this Court to decide petitions filed under Section 304 "without unequal deference" to its review of all questions presented under State and Federal law. *See* § 304(e) (1999). However, where a statute was issued, adopted or enacted before September 3, 1998, deference should be given to the OCC. *See* § 104(d)(2)(C)(i) (1999) ("*OCC Deference:* Section 304(e) does not apply with respect to any State statute, regulation, order, interpretation, or other action regarding insurance sales, solicitation, or cross marketing activities described in subparagraph (A) that was issued, adopted, or enacted before September 3, 1998, and that is not described in subparagraph (B)." (emphasis added)). The West Virginia Insurance Sales Consumer Protection Act was enacted in 1997. Additionally, the statutes at issue in the instant case do not fall within the categories of preserved state laws enumerated under § 104(d)(2)(B). Therefore, in accordance with § 104(d)(2)(C)(i) of the GLBA, we give deference to the OCC.

Although the OCC is entitled to some deference, the GLBA does not provide guidance as to what level of deference is appropriate.[5] The OCC argues that the deference enunciated in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), should be applied in the instant case. Under *Skidmore*, a court should give some consideration to the interpretation of an ambiguous statutory provision made by the administering agency because of the agency's experience and expertise. *See* 323 U.S. at 140. The Supreme Court held in *Christenson v. Harris County*, 529 U.S. 576 (2000), that agency "interpretations contained in formats such as opinion letters are 'entitled to respect'" under *Skidmore*, "but only to the extent that those interpretations have the 'power to persuade.'" *Christenson*, 529 U.S. at 587 (citations omitted). Therefore, we hold that *Skidmore* deference applies to this case.

---

[5]The briefs submitted to this Court by the Petitioners and Intervenors argue that deference should not be given to the OCC under the *Chevron* standard. During oral argument, however, the OCC stated that it was not arguing for *Chevron* deference because its regulation writing authority does not come from the GLBA; rather, its authority to write regulations originates in the National Banking Act.

## C.

We now must review the Preemption Letter to see if it meets the standard for persuasiveness under *Skidmore*. *See Skidmore* at 140. In reviewing persuasiveness, we must consider the thoroughness of the OCC's consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements. *Id.*

Section 6 of the West Virginia Act prohibits financial employees with lending responsibilities from soliciting the sale of insurance. Section 9(a) requires disclosures to be made in writing, "including in connection with advertisements and promotional material, and orally 'during any customer contact.'" Section 10(a) prohibits financial institutions from making an insurance-related referral or solicitation of a loan customer until after the bank has approved the loan or credit. Section 13 requires a customer's separate written consent to the bank's disclosure of insurance information to an agent or broker affiliated with the bank no less than two days after the time of application for, approval of and making of the loan or extension of credit. Finally, Section 14 requires banks to sell insurance products in an area separate and distinct from the institution's lending and deposit-taking activities.

The OCC found that these provisions of the West Virginia Act were preempted by federal law. *See* Preemption Letter at 2. In reaching its result, the OCC relied on public comments received during the formal notice-and-comment procedure. *Id.* at 2. Additionally, the OCC "relied on the written comment submitted by the Insurance Commissioner for the State of West Virginia and on discussions with the staff of the West Virginia Insurance Department" to clarify how particular provisions of the West Virginia Act would be administered or applied. *Id.* Because the OCC implemented a formal notice-and-comment procedure and consulted the West Virginia Insurance Department and the Insurance Commissioner of West Virginia in reaching its decision, we find that the OCC's consideration was thorough.

We turn now to review the validity of the OCC's reasoning. In making its findings, the OCC reasoned that the West Virginia provisions at issue are disruptive to bank operations, increase bank operat-

ing costs, and substantively affect a bank's ability to solicit and sell insurance products. *See* Preemption Letter at 16-31 (J.A. 73-88). These effects prevent or significantly interfere with a bank's ability to engage in insurance sales, solicitation, or crossmarketing activity. Additionally, the OCC found that the requirements under Section 13 violate the Fair Credit Reporting Act, which prohibits State laws that impose requirements or prohibitions regarding "the exchange of information among persons affiliated by common ownership or common corporate control." 15 U.S.C.A. § 1681t(b)(2) (1998). Because we find the OCC's reasoning to be valid, we hold that the Preemption Letter meets the standard for persuasiveness under *Skidmore*.

## IV.

Because we hold that the OCC had authority to interpret the GLBA and that its decision met the standard for persuasiveness under *Skidmore*, we dismiss the petition for review.

*DISMISSED*

LUTTIG, Circuit Judge, concurring in the judgment:

I agree with the judgment reached by the court that this action should be dismissed. I also agree, for the reasons stated in the OCC opinion letter and those articulated by counsel for the OCC during oral argument, that the West Virginia provisions at issue are preempted under federal law.

KING, Circuit Judge, dissenting:

The majority today addresses complex issues regarding the possible preemptive effect of the Gramm-Leach-Bliley Act (the "GLBA") on state regulation of the insurance industry. To reach these issues, the majority[1] reviews an advisory opinion of the Office of the Comptroller of the Currency (the "OCC"), which suggests that GLBA pre-

---

[1]In referring to "the majority," I mean the majority's *judgment* that dismisses the Commissioner's petition for review on the basis that federal law preempts aspects of the West Virginia Code. I realize that there is no majority opinion here.

empts certain provisions of West Virginia law. In reviewing a non-binding OCC opinion, however, my good colleagues run afoul of the case or controversy mandate of Article III of the Constitution.[2] Because we lack jurisdiction to render a decision under these circumstances, I respectfully dissent.

## I.

On May 8, 2000, the West Virginia Bankers Association (the "WVBA") sought an opinion from the OCC that GLBA preempts certain West Virginia statutes. More precisely, the WVBA asked the OCC to "preempt ten (10) provisions of the West Virginia Insurance Sales Consumer Protection Act." Comm'r Pet. Ex. A. Although WVBA's letter implied that the OCC could itself preempt state law, it effectively requested the OCC to issue an opinion declaring that federal law preempts ten provisions of the West Virginia Code.[3]

On June 2, 2000, the OCC published notice of the WVBA letter in the *Federal Register* and requested comments on the preemption issue. After considering the WVBA request and reviewing comments, the OCC issued an opinion (the "Preemption Opinion") on September 24, 2001, suggesting that several provisions of West Virginia law are preempted. Even though the Preemption Opinion was preceded by formal notice and comment, the OCC acknowledges that it "does not purport to be a regulation, an adjudication, or a licensing procedure carrying the force of law." OCC Br. at 21. In fact, in this very pro-

---

[2]Pursuant to Article III of the Constitution of the United States, the power of our judiciary extends:

> to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States, . . . [and] to Controversies to which the United States shall be a Party; to Controversies between two or more States; between a State and Citizens of another State; between Citizens of different States; . . . and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const. art. III, § 2, cl. 1.

[3]The contested provisions of the West Virginia Code are contained within sections 6, 8-11, 13, and 14 of Article 11A of Chapter 33.

ceeding, the OCC criticizes the Commissioner for failing to acknowl-edge that the Preemption Opinion is "a legal *opinion*," *id.* at 19 (emphasis in original), and represents only "informal agency guid-ance." *Id.* at 21.

As the OCC recognizes, it is not authorized to render a binding pre-emption decision. *Id.* at 22. The OCC is an agency in the Department of the Treasury, charged with the administration of the National Bank Act. *See* 12 U.S.C. § 1. It has authority over the chartering, supervi-sion, and regulation of national banks, including the right to deter-mine the nature and scope of statutorily authorized banking powers. *See* 12 U.S.C. § 24 (Seventh). In addition, the Comptroller is entitled to promulgate regulations to implement 12 U.S.C. § 92, a statute enabling national banks to sell insurance in small towns, and the Comptroller possesses limited authority to "prescribe rules and regu-lations to carry out the responsibilities of the office." 12 U.S.C. § 93a.

The OCC has no authority, however, to act unilaterally in interpret-ing or implementing GLBA. To the extent that the OCC possesses any power under GLBA, it shares that power with other federal bank-ing agencies. *See* GLBA, § 305 (codified at 12 U.S.C. § 1831x). Not-withstanding the position of my good friend Judge Gregory, *ante* at 6, GLBA was not designed to expand the power of national banks to issue insurance, but rather its purpose was to remove the traditional barriers among the banking, insurance, and securities industries. Therefore, the OCC does not possess, nor does it claim, a role in implementing GLBA. Because the OCC is not charged with enforcing or implementing GLBA, its opinions on GLBA's preemptive effect are not entitled to *Chevron*-type deference.[4] *See Chevron U.S.A., Inc.*

---

[4]If the Preemption Opinion had purported to interpret the incidental powers of national banks pursuant to the National Bank Act, we would be presented with an entirely different case. Had the OCC issued this type of opinion, it would be entitled to *Chevron* deference, and (more importantly for our purposes) we would have jurisdiction to review it. *See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256-57 (1995) (conducting *Chevron* analysis for an OCC inter-pretation of incidental powers of national banks under 12 U.S.C. § 24 (Seventh)); *Indep. Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 643 (D.C. Cir. 2000) (same); *Sec. Indus. Ass'n v. Clarke*, 885 F.2d 1034,

*v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984).[5] Indeed, it is doubtful that an agency's opinion on the preemptive effect of federal law should ever be accorded deference since, as the OCC recognizes, "preemption issues are ultimately a matter to be decided by federal courts." OCC Br. at 22. Therefore, the Preemption Opinion merely represents an advisory opinion of the OCC on an issue outside of its statutory powers.

## II.

Although it concedes that the Preemption Opinion lacks the force of law, the OCC nevertheless insists that we should render a decision in this proceeding because its disagreement with the Commissioner presents a justiciable case or controversy within the meaning of Article III. *Id.* at 23 n.5. According to the OCC, its legal opinions influence the business decisions of national banks, and the Preemption Opinion may indirectly impair the Commissioner's ability to enforce state law. OCC Supp. Br. at 4, 6. As another court has suggested, the OCC opinions may have the practical effect of "permitting and encouraging national banks" to disobey otherwise enforceable laws. *Sec. Indus. Ass'n v. Clarke*, 885 F.2d 1034, 1039 (2d Cir. 1989).

Despite the possible real-world effects of the Preemption Opinion, the Commissioner's petition for review fails to present a justiciable case or controversy.[6] Since the Preemption Opinion is purely advi-

---

1037-38 (2d Cir. 1989) (addressing OCC opinion approving national bank practice). In this situation, however, the OCC issued a wide-ranging opinion on the general preemptive effect of GLBA. As the OCC properly recognizes, its Preemption Opinion is not entitled to *Chevron*-type deference and, as it should have recognized, we have no jurisdiction to review such an opinion.

[5]Even if the OCC was the agency in charge of enforcing GLBA, informal agency opinions are not generally entitled to *Chevron* deference. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant *Chevron*-style deference.").

[6]The First Circuit — in a dispute between a state regulator and the OCC over GLBA's preemptive effect — has also recently raised the con-

sory, it does not interfere with the Commissioner's ability to enforce West Virginia law. To the extent that a bank might rely on the Preemption Opinion in violating state law, it would do so at its own risk. Because the Preemption Opinion has no legal effect, the petition for review simply asks us to decide whether federal law might, in some future case, provide a defense to a bank's noncompliance with state law. Such a hypothetical scenario fails to present a justiciable question. *See Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (finding no Article III jurisdiction to issue "an advance ruling on an affirmative defense"); *Miller v. FCC*, 66 F.3d 1140, 1145 (11th Cir. 1995) ("By asking this court to decide what another court should do in a future case, petitioners are posing a hypothetical question, the answer to which would be an advisory opinion.").

### A.

Under Article III, the judicial power of the federal courts is limited "to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United For Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). This "bedrock requirement" ensures that Article III power "is not an unconditioned authority to determine the constitutionality of legislative or executive acts." *Id.*; *see also Raines v. Byrd*, 521 U.S. 811, 818 (1997). Indeed, the judicial power "'is legitimate only in the last resort, and as a necessity in the determination of real, earnest and vital controversy.'" *Valley Forge Christian Coll.*, 454 U.S. at 471 (quoting *Chicago & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892)). As part of this case or controversy requirement, federal courts are simply not entitled to issue advisory opinions on hypothetical questions.

Presented with facts nearly identical to those here, the Eleventh Circuit, in *Miller v. FCC*, concluded that the constitutional prohibition on advisory opinions precluded its review of a non-binding agency opinion. 66 F.3d at 1141-42. In that situation, candidates for public office in Georgia had challenged the FCC's authority to issue a ruling

---

cern that federal courts lack Article III jurisdiction in this regard. *See Bowler v. Hawke*, No. 02-1738 (1st Cir. argued August 2, 2002). While the First Circuit has ordered supplemental briefing on the Article III issue, it has yet to render a decision on the matter.

on whether federal law preempted state law causes of action. *Id.* The FCC's ruling only represented its opinion on the preemptive effect of federal law, and it thus did not carry the force of law. *Id.* at 1144. Because the FCC's opinion had no binding effect, the court of appeals concluded that the petition for review presented an abstract, hypothetical question rather than a justiciable case or controversy. *Id.* at 1145-46; *see also id.* at 1146 ("[W]e are prohibited from determining the propriety of the FCC's declaratory ruling given the abstract circumstances in which this issue is presented.").

Similarly, in *New York Stock Exchange, Inc. v. Bloom*, 562 F.2d 736 (D.C. Cir. 1977), the Court of Appeals for the District of Columbia held that a non-binding OCC opinion was not ripe for judicial review as required by Article III. *Id.* at 736-37, 41. In that case, a bank requested an OCC opinion on whether a proposed banking service would violate the Glass-Steagall Act (the "GSA"), the pre-GLBA statute that had prohibited banks from engaging in insurance practices. *Id.* at 737. The OCC responded to this request with an opinion letter concluding that the proposed service was consistent with the GSA. *Id.* at 739. The New York Stock Exchange (the "NYSE") then sued the OCC under the Administrative Procedures Act, challenging the OCC opinion. In response, the OCC insisted that the NYSE's claim was not ripe for review because the opinion letter did not carry the force of law.

The court of appeals agreed with the OCC, ruling that the NYSE's challenge to the OCC opinion was not ripe for review. The court evaluated the ripeness issue under the two-part inquiry of *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967), analyzing (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding judicial review. In applying the first prong of *Abbott Laboratories*, the court noted "that appellants are challenging informal opinion letters rather than formal rules or policy statements." *New York Stock Exch.*, 562 F.2d at 741. The court also pointed out that undeveloped facts would be relevant to deciding the merits of the NYSE's challenge, so it concluded that judicial review of the OCC opinion would be premature. *Id.* Addressing the potential hardship to the parties of withholding such review, the court of appeals emphasized that "appellants' conduct [was] not directly regulated by the agency action at issue and consequently they are not facing a 'Hob-

son's choice' between burdensome compliance and risky noncompliance." *Id.* Accordingly, it concluded that the NYSE's challenge to the OCC opinion failed to pass Article III muster. *Id.* at 743.

## B.

The constitutional prohibition on advisory opinions, embodied in Article III and its jurisprudence, bars the exercise of jurisdiction here. The Commissioner's petition for review presents nothing more than an abstract disagreement between state and federal regulators. *See Abbott Labs.*, 387 U.S. at 148 (noting that ripeness doctrine is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements"). The Preemption Opinion simply does not represent the type of final agency action that would be subject to judicial review.[7] *Compare NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256-57 (1995) (reviewing final OCC opinion issued pursuant to 12 U.S.C. § 24 (Seventh)); *Bank of Am. v. San Francisco*, 309 F.3d 551 (9th Cir. 2002) (same); *see also Florida v. Weinberger*, 492 F.2d 488, 492 (5th Cir. 1974) (finding jurisdiction to review agency regulation that "is final and is formally and actually in effect").

Under the *Abbott Laboratories* test, the question of GLBA's preemptive effect on West Virginia law is not ripe for judicial review. First, the preemption issues are not fit for our consideration. *See* 387 U.S. at 149. In order to address the issue of preemption, the majority must make assumptions about undeveloped factual issues that are material to its decision. For example, the question of whether West

---

[7]Ordinarily, Congress does not purport to give federal courts jurisdiction over provisional or preliminary agency actions. *See* 5 U.S.C. § 704 (requiring final agency action for judicial review under Administrative Procedures Act); *see also Allied Corp. v. United States Int'l Trade Comm'n*, 850 F.2d 1573, 1578 (Fed. Cir. 1988) ("That an agency may choose to render advisory opinions cannot create for one displeased with its advice a cause of action cognizable in an Article III court."). In this situation, however, the Article III issue is squarely presented because GLBA attempts to give federal courts jurisdiction to adjudicate disputes between state and federal regulators, no matter how abstract such a dispute may be. *See* GLBA, § 304(a) (codified at 15 U.S.C. § 6714(a)).

Virginia law will interfere with the ability of banks to enter the insurance market involves factual issues about insurance and banking practices. Because no bank has been joined as a party in this proceeding, the majority is forced to rely on the OCC to understand the banking and insurance industries in West Virginia. *Ante* at 8. The OCC, however, is an imperfect surrogate for the banking and insurance industries. To ensure a full development of the relevant facts, the scope of GLBA's preemption should initially be addressed in an enforcement proceeding initiated by a state regulator, or in a declaratory judgment action instituted by a bank.[8]

Second, judicial review is not necessary at this juncture to protect the parties from any undue hardship. *See Abbott Labs.*, 387 U.S. at 151-53. The parties have alternate avenues available through which to seek judicial review of the preemption issues. If the petition for review is dismissed for want of jurisdiction, the Commissioner may then institute an enforcement action against non-complying banks, or banks may institute declaratory judgment proceedings against the Commissioner. *See Indep. Broker-Dealers' Trade Ass'n v. SEC*, 442 F.2d 132, 140 (D.C. Cir. 1971) (reviewing informal agency action because party had no other recourse to obtain relief). Further, the Preemption Opinion does not place regulated entities into the position of making a "Hobson's Choice" between burdensome compliance or risky noncompliance. *See Abbott Labs.*, 387 U.S. at 152-53; *Nat'l Automatic Laundry Cleaning Council v. Shultz*, 443 F.2d 689, 696-97 (D.C. Cir. 1971) ("*NALCC*"). Because the Preemption Opinion has no legal effect, the parties face no undue hardship in waiting for judicial review.

---

[8]Where the OCC has authorized national banks to engage in practices that violate state or municipal laws, national banks typically initiate declaratory judgment proceedings against state or local regulators. *See generally Bank of Am. v. San Francisco*, 309 F.3d 551 (9th Cir. 2002) (bank sued local regulator); *Wells Fargo Bank Texas, N.A. v. James*, 184 F. Supp. 2d 588 (W.D. Tex. 2001) (bank sued state regulator); *Metrobank Nat'l Ass'n v. Foster*, 178 F. Supp. 2d 987 (S.D. Iowa 2001) (banks sued state regulator).

## C.

Significantly, the petition does not request review of a coercive (even if technically non-binding) agency opinion.[9] In limited circumstances, an "agency action may be reviewable even though it is never to have a formal, legal effect" because it will have "an immediate and practical impact" on regulated entities. *Cont'l Airlines, Inc. v. Civil Aeronautics Bd.*, 522 F.2d 107, 124 (D.C. Cir. 1975) (en banc). For example, in *Independent Broker-Dealers' Trade Association*, the Second Circuit reviewed an SEC letter asking the NYSE to ban a controversial brokering practice. 442 F.2d at 139-40. The SEC could have issued binding regulations, but the NYSE changed its rules voluntarily. *Id.* Even though the SEC letter was merely suggestive, the court reviewed a trade association's challenge, concluding that the letter had a sufficiently coercive effect to justify judicial review. *Id.* at 145.

In the circumstances presented here, however, the Preemption Opinion is not sufficiently coercive to justify judicial review. It does not carry the force of law, it does not impose affirmative obligations, and it does not threaten consequences for noncompliance. Put simply, the Preemption Opinion is not reviewable because the OCC acted outside its regulatory authority. *Compare Appalachian Power Co. v. EPA*, 208 F.3d 105, 1021 (D.C. Cir. 2000) (reviewing agency "guidance" on interpretation of its regulations); *Student Loan Mktg. Ass'n v. Riley*, 104 F.3d 397, 407 (D.C. Cir. 1997) (reviewing agency opinion on interpretation of agency's organic statute). Even if, as a practi-

---

[9]The label attached by an agency to its action is not determinative of the action's finality. *See CBS v. United States*, 316 U.S. 407 (1942). An agency action may, in fact, be final even though the agency characterizes it as tentative, preliminary, or provisional. *See, e.g.*, *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020-21 (D.C. Cir. 2000) (reviewing agency "guidance" because it was effectively the agency's final position). To decide whether an agency action is reviewable, courts take a pragmatic approach to the requisite finality and look to whether the agency action has "contemplation of expected conformity." *Indep. Broker-Dealers' Trade Ass'n*, 442 F.2d at 141; *see also NALCC*, 443 F.2d at 697. In this situation, unlike in *CBS* and its progeny, the Preemption Opinion cannot be considered a final, reviewable action because it deals with a matter outside the OCC's bailiwick. Therefore, the OCC cannot reasonably expect conformity with its position.

cal matter, national banks *will* rely on the Preemption Opinion, such reliance would result from a mistaken legal conclusion regarding the OCC's authority, and it does not create Article III jurisdiction.

## III.

Because the majority has reached beyond our jurisdiction in rendering this decision, I respectfully dissent.